615 So.2d 990 (1993)
Terry LEDET and Debra Roy Ledet
v.
QUALITY SHIPYARDS, INC.
No. 92 CA 0004.
Court of Appeal of Louisiana, First Circuit.
March 5, 1993.
*991 Joseph J. Weigand, Houma, for plaintiffs and appellants, Terry and Debra Roy Ledet.
Peter S. Koepell, New Orleans, for defendant and appellee, Quality Shipyards, Inc.
Janice B. Unland, Metairie, for defendant and appellant, Hutco, Inc. & U.S. Fire Ins. Co. the intervenors.
William J. Larzelere, Jr. and Morgan J. Wells, Jr., Metairie, for defendant and appellee, Quality Shipyards, Inc.
Before CARTER, LeBLANC and PITCHER, JJ.
PITCHER, Judge.
This appeal arises out of the trial court's judgment granting a motion for summary judgment.

FACTS
On or about December 5, 1987, plaintiff, Terry Ledet, was employed as a sandblaster/painter by Hutco Offshore, Inc. ("Hutco"), and working at Quality Shipyards, Inc. ("Quality"), when he was injured while working on a sand hopper. At the time of Ledet's accident, Ledet's employer, Hutco, had in full force and effect a policy of insurance which provided coverage for obligations pursuant to the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq. and had paid Ledet compensation and medical benefits pursuant to this policy.
On January 20, 1988, Ledet and his wife, Debra Roy Ledet, filed suit in tort against Quality for injuries he sustained. Thereafter, Hutco and U.S. Fire Insurance Company ("U.S. Fire") filed a petition of intervention seeking reimbursement for compensation and medical benefits paid to Ledet.
Thereafter, Quality filed a motion for summary judgment asserting that Ledet was its borrowed employee, and that, as such, it was immune from tort liability under the LHWCA.
The trial court granted Quality's motion for summary judgment finding that Ledet was Quality's employee. The judgment was rendered on September 13, 1991. From this adverse judgment, Ledet, Hutco, and U.S. Fire appeal contending that the trial court erred in finding that plaintiff was the borrowed employee of the defendant.

SUMMARY JUDGMENT
Generally, a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits show there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Kerwin v. Nu-Way Construction Service, Inc., 451 So.2d 1193, 1194 (La.App. 5th Cir.), writ denied, 457 So.2d 11 (La.1984); Landry v. Brandy, 389 So.2d 93, 95 (La.App. 4th Cir.1980); Cooper v. Anderson, 385 So.2d 1257, 1258 (La.App. *992 4th Cir.), writ denied, 393 So.2d 738 (La. 1980). The burden is upon the mover for summary judgment to show that no genuine issues of material fact exist, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Frazier v. Freeman, 481 So.2d 184, 186 (La.App. 1st Cir.1985); Asian International, Ltd. v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 435 So.2d 1058, 1063 (La.App. 1st Cir.1983).
Summary judgments are not favored, and any reasonable doubt should be resolved against the mover. Dupuy v. Gonday, 450 So.2d 1014, 1015 (La.App. 1st Cir.1984). In determining whether material issues have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980); Chaisson v. Domingue, 372 So.2d 1225, 1227 (La.1979).
On a motion for summary judgment, the court must first determine whether the supporting documents presented by the moving party are sufficient to resolve all material factual issues. Watson v. Cook, 427 So.2d 1312 (La.App. 2nd Cir. 1983). If they are insufficient, summary judgment must be denied. If the supporting documents are sufficient, the burden shifts to the opposing party to present evidence showing that material facts are still at issue. LSA-C.C.P. art. 966; South Louisiana Bank v. Williams, 591 So.2d 375 (La.App. 3rd Cir.1991), writ denied, 596 So.2d 211 (La.1992); Allied Corporation v. McNamara, 536 So.2d 1290 (La.App. 1st Cir.1988); Dement v. Red River Valley Bank, 506 So.2d 1329 (La.App. 2nd Cir. 1987).
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, Division of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350 (La. App. 5th Cir.1988).

BORROWED EMPLOYEE
If Ledet is found to be the "borrowed employee" of Quality, he is covered by the LHWCA and is entitled to worker's compensation under the Act. Worker's compensation under the LHWCA is the exclusive remedy for an employee against his employer because the Act bars all common law tort actions against the employer. Melancon v. Amoco Production Co., 834 F.2d 1238, 1243 (5th Cir.1988).
The issue of whether a borrowed servant relationship existed is a matter of law for the court to determine. Fanguy v. Dupre Brothers Construction Company, Inc., 588 So.2d 1251, 1257 (La.App. 1st Cir. 1991), writ denied, 594 So.2d 892 (La.1992). There are, however, nine separate factual inquiries underlying, "borrowed employee" status. These nine factors are:
(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
(2) Whose work is being performed?
(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
(4) Did the employee acquiesce in the new work situation?
(5) Did the original employer terminate his relationship with the employee?
(6) Who furnished tools and place for performance?
(7) Was the new employment over a considerable length of time?
(8) Who had the right to discharge the employee?
(9) Who had the obligation to pay the employee?
Although the trial judge did not make express written findings on all nine factors in determining whether Ledet was a borrowed *993 employee, the trial judge noted that he had considered these factors and found that Ledet was a borrowed employee of Quality.

CONTROL
The essence of "employer/employee relationship" for workers' compensation purposes is right to control, and four primary evidentiary factors considered in deciding the issue are: selection and engagement; payment of wages; power of dismissal; and power of control. Shelvin v. Waste Management, Inc., 580 So.2d 1022 (La.App. 3rd Cir.1991). In order for an employee to be deemed "borrowed" for workers' compensation purposes, the general employer must relinquish control to the borrowing employer. Freeman v. Brown's Furniture of Bunkie, Inc., 527 So.2d 544 (La.App. 3rd Cir.1988).
Although Ledet applied for the job at the Hutco offices, he reported to work at Quality Shipyards and never worked any other place while he was employed with Hutco. The record reveals that Ledet was supervised by Quality employees throughout his entire workday. Hutco would bring his paycheck to Quality Shipyards on Friday afternoons, but other than that, Ledet never heard from Hutco. Ledet also testified that Quality had the power to fire any unsatisfactory employee sent from Hutco. It is clear, then, that Quality had control over Ledet and the work he was performing.

WHOSE WORK WAS BEING PERFORMED?
Ledet was hired by Hutco, but the only place he worked was at Quality's shipyard. He was a sandblaster and painter for Quality. Clearly, his work was in furtherance of Quality's business of ship building and repair, and it was Quality's work that was being performed.

WAS THERE AN AGREEMENT, UNDERSTANDING OR MEETING OF THE MINDS BETWEEN HUTCO AND QUALITY?
There was an alleged agreement between Quality and Hutco which provided that Hutco employees were not to be considered employees of Quality for any reason whatsoever.[1] However, the actions of Quality and Hutco are clearly inconsistent with this agreement. Ledet worked solely at the Quality shipyard while employed with Hutco, and he had virtually no contact with Hutco during the year that he was employed by them. In Melancon v. Amoco Production Co., 834 F.2d at 1245, the court stated that "the reality at the worksite and the parties' actions in carrying out a contract... can impliedly modify, alter, or waive express contract provisions."
The parties to a contract cannot automatically prevent a legal status like "borrowed employee" from arising merely by saying in a provision in their contract that it cannot arise. Melancon v. Amoco Production Co., 834 F.2d at 1245. Additionally, a summary judgment can be affirmed despite the existence of such a contract clause if all factors other than the contract overwhelmingly establish the "borrowed employee" status. West v. Kerr-McGee Corporation, 765 F.2d 526, 531 (5th Cir.1985); Alday v. Patterson Truck Line, Inc., 750 F.2d 375, 379 (5th Cir.1985); Gaudet v. Exxon Corporation, 562 F.2d 351, 358 (5th Cir.1977).

DID LEDET ACQUIESCE IN THE NEW WORK SITUATION?
The record shows that Ledet worked exclusively at the Quality shipyard for approximately one year. Although he was initially hired by Hutco, he was immediately sent to Quality where he reported to work everyday. He was supervised by Quality foremen and followed their instructions. For these reasons, we find that Ledet acquiesced in the work situation at Quality's shipyard.

*994 DID HUTCO TERMINATE ITS RELATIONSHIP WITH LEDET?
In considering this factor, the emphasis should be on the lending employer's relationship with the employee while the borrowing occurs. Melancon v. Amoco Production Co., 834 F.2d at 1246. As noted earlier, Ledet was supervised solely by Quality employees, never by Hutco employees. The only time Ledet had contact with Hutco, other than when he initially applied for the job, was on Friday afternoons when Hutco delivered his check to Quality's shipyard. Hutco did not even keep track of the number of hours worked by Ledet; Ledet punched a time clock at Quality, and Quality kept up with the time cards until Hutco picked them up. From these facts, we are convinced that Hutco had terminated its relationship with Ledet.

WHO FURNISHED TOOLS AND PLACE FOR PERFORMANCE?
Ledet testified that while employed with Hutco, he never worked anywhere but at Quality's shipyard. He also stated that he never used or received any tools or equipment from Hutco because Quality provided all the tools and equipment he used at the shipyard.

WAS THE EMPLOYMENT OVER A CONSIDERABLE LENGTH OF TIME?
Ledet's testimony established that he was employed with Quality for approximately one year, and he only worked for Quality during that period of time. In Capps v. N.L. Baroid-NL Industries, Inc., 784 F.2d 615 (5th Cir.1986), the court found that one day's employment did not bar a finding of borrowed employee status. Certainly, then, one year would not bar such a finding.

RIGHT TO DISCHARGE LEDET
In Melancon v. Amoco Production Co., 834 F.2d at 1246, the court noted that one's power to terminate an employee's services at the job site was enough to satisfy this requirement. Ledet testified that if Quality found his work to be unsatisfactory, Quality could inform Hutco, and demand that Ledet not return to their shipyard. Moreover, Ledet indicated that it was his impression that Hutco would terminate his services completely if Quality became dissatisfied with his job performance. Clearly, then, Quality possessed the power to discharge Ledet.

OBLIGATION TO PAY LEDET
Ledet testified that he received his paycheck every Friday afternoon when someone from Hutco showed up at Quality's Shipyard with checks for the Hutco employees working at Quality. The determinative factor here is whether Quality furnished the funds from which Hutco paid Ledet. Melancon v. Amoco Production Co., 834 F.2d at 1246; Capps v. N.L. Baroid-NL Industries, Inc., 784 F.2d at 618. The record shows that Ledet punched a time clock at the Quality shipyard, and Quality kept track of his hours for Hutco. Quality paid Hutco for the services performed by Ledet, and Hutco, in turn, paid Ledet from funds received from Quality.
In the instant case, we find that the evidence presented in support of Quality's motion for summary judgment established that Ledet was a borrowed employee of Quality. Thereafter, Ledet could no longer rest upon the allegations in his petition, and the burden shifted to him to present evidence to establish that a genuine issue of material fact existed with regard to his status as a borrowed employee. This he did not do. None of the opposing parties filed affidavits or other documents to contradict the facts contained in Ledet's deposition which was attached to Quality's motion for summary judgment.[2]
Therefore, having found that Ledet was Quality's borrowed employee, Ledet's only remedy against Quality is in worker's compensation. The motion for summary judgment *995 filed by Quality was properly granted.[3]

CONCLUSION
For the above reasons, the judgment of the district court granting Quality's motion for summary judgment is affirmed. Plaintiff is cast for all costs of this appeal.
AFFIRMED.
NOTES
[1] The agreement was not attached as an exhibit to the Motion For Summary Judgment and was not made a part of the record.
[2] Ledet filed a memorandum in opposition to Quality's motion for summary judgment, but it dealt only with the issue of whether Ledet was the statutory employee of Quality.
[3] We pretermit a discussion of whether Ledet was the statutory employee of Quality, an issue raised by Quality prior to the district court's ruling and in the brief filed with this court.