670 So.2d 543 (1996)
Matthew HALL
v.
EQUITABLE SHIPYARD, INC. and Trinity Industries, Inc.
No. 95-CA-1754.
Court of Appeal of Louisiana, Fourth Circuit.
February 29, 1996.
*544 Lloyd N. Frischhertz, Seelig, Cossé, Frischhertz & Poullard, New Orleans, for Plaintiff/Appellant, Matthew Hall.
Daniel J. Caruso, Robert L. Redfearn, Jr., Simon, Peragine, Smith & Redfearn, L.L.P., New Orleans, for Defendant/Appellee, Trinity Industries, Inc.
Before CIACCIO, PLOTKIN and MURRAY, JJ.
MURRAY, Judge.
Appellant Matthew Hall filed suit against appellee Trinity Industries, Inc. (Trinity), for damages resulting from an accident which occurred on March 31, 1991 at a Trinity shipyard. Mr. Hall alleged in his petition that Trinity was negligent and sought tort damages. Trinity moved for summary judgment on the basis that Mr. Hall was a borrowed servant of Trinity, and as such, his exclusive remedy was under either the Longshoreman & Harbor Worker's Compensation Act (LHWCA) or Louisiana worker's compensation law.
The trial court granted summary judgment on the issue of borrowed servant only, finding that Mr. Hall was the borrowed servant of Trinity. The trial court specifically found that in connection with Mr. Hall's maritime cause of action, Trinity was exempt from tort liability pursuant to La.R.S. 23:1032 and La. R.S. 23:1061.[1] Mr. Hall filed this appeal alleging that the court erred in granting *545 Trinity's motion for summary judgment on the issue of borrowed servant status because there were material issues of fact to be decided by the trier of fact.

STATEMENT OF FACTS:
Mr. Hall applied for a position as a sandblaster at the Trinity shipyard. He was hired through Consolidated Employment Systems, Inc. (CESI), a subcontractor of Trinity. Trinity and CESI had entered into an agreement whereby CESI would hire workers to work at various Trinity job sites. CESI would invoice Trinity on a thirty day basis according to a rate schedule in the agreement. Trinity agreed that it would not convert any CESI employees to Trinity employees for a minimum of ninety days so that CESI could recover its overhead costs.
At the time of the accident, Mr. Hall had been working at the Trinity yard for approximately six months. Trinity provided all of the tools and equipment which Mr. Hall needed to perform his duties. Mr. Hall was supervised by Haroun Kahn, a Trinity foreman. He directed Mr. Hall as to what work needed to be done. Mr. Hall worked exclusively at the Trinity yard, and punched in and out on a Trinity time clock. However, his paychecks were issued by CESI and his insurance coverage and other benefits were provided by CESI.
Mr. Hall was injured while sandblasting a vessel in the Trinity yard. He was struck by a Trinity manlift being operated by a Trinity employee and was knocked to the ground from the scaffold on which he was working.
DISCUSSION:
A summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(B); Charles v. Faust, 487 So.2d 612 (La.App. 4th Cir. 1986). Summary judgments are not favored and any doubt will be resolved against granting the motion and in favor of a trial on the merits. Civello v. Johnson, 567 So.2d 643 (La.App. 4th Cir.), writ denied, 569 So.2d 987 (La.1990). The mover has the burden of showing that no genuine issues of material fact exist, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Ledet v. Quality Shipyards, Inc., 615 So.2d 990, 992 (La.App. 1st Cir.1993). A fact is material if it is essential to the plaintiff's cause of action under the applicable theory of recovery and without which plaintiff could not prevail. Material facts are generally those that potentially ensure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Because materiality is determined by the applicable substantive law, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691, 699 (La.App. 4th Cir.1992).
Summary judgments are reviewed de novo by appellate courts using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991).
In the instant case, the issue on appeal is whether there is any genuine issue of material fact concerning Mr. Hall's status as a borrowed servant of Trinity. If Mr. Hall is a borrowed servant then he is covered by the LHWCA and is entitled to worker's compensation under the Act. The exclusive remedy for an employee against his employer is worker's compensation under the LHWCA because the Act bars all common law tort actions against the employer. Melancon v. Amoco Production Co., 834 F.2d 1238, 1243 (5th Cir.1988).
The issue of borrowed servant status is a legal issue for the court to decide. However, there are nine factual questions underlying "borrowed servant" status.
These nine factors are: (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation? (2) Whose work is being performed? (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing *546 employer? (4) Did the employee acquiesce in the new work situation? (5) Did the original employer terminate his relationship with the employee? (6) Who furnished tools and place for performance? (7) Was the new employment over a considerable length of time? (8) Who had the right to discharge the employee? (9) Who had the obligation to pay the employee?
Ledet, supra at 992. The trial judge gave written reasons for determining that Mr. Hall was a borrowed servant of Trinity. He addressed each of the above factors and found that no disputed material issues existed. We agree and affirm the granting of summary judgment.
1) Who has control over the employee?
An employee is considered borrowed for worker's compensation purposes when his general employer gives up control to the borrowing employer. Freeman v. Brown's Furniture of Bunkie, Inc., 527 So.2d 544 (La.App. 3d Cir.1988). Mr. Hall reported to work at Trinity and worked exclusively at the Trinity yard while employed by CESI. The evidence shows that at all times Mr. Hall was supervised by Mr. Kahn, a Trinity employee. Mr. Hall argues that other than instructing him as to which vessel to sandblast, he was not supervised at all. However, Mr. Kahn stated in his deposition that with a new employee, an experienced Trinity employee would closely supervise for one to two hours at the beginning, then less closely for two to three days. After that, the CESI employee would simply be directed as to which vessel to blast.
Mr. Hall had little to no contact with CESI with the exception of CESI providing his paycheck for Trinity to distribute. Mr. Hall testified in his deposition that he was not even sure where CESI's offices were located.
In Ledet, a case with striking factual similarities to the instant case, plaintiff applied for his job at the subcontractor's office, but worked entirely at the defendant's facility. He was supervised by defendant's employees. Plaintiff's paycheck was issued by the subcontractor, but was delivered to defendant's premises for distribution. Additionally, plaintiff testified that he believed defendant had the authority to fire any unsatisfactory employee supplied by the subcontractor. The court found it clear that defendant had control over plaintiff and the work he was performing. Ledet, supra at 993. Accordingly, we agree with the trial court that Trinity had control over Mr. Hall.
2) Whose work was being performed?
Although Mr. Hall was hired by CESI, he worked exclusively as a sandblaster at the Trinity yard from the time he was hired to the time of his accident. His work was clearly in furtherance of Trinity's business, and it was Trinity's work that was being performed. We agree that Mr. Hall was performing Trinity's work.

3) Was there an agreement, understanding or meeting of the minds between CESI and Trinity?

A formal agreement between the two employers is not indispensable to the borrowed servant relationship. However, the term borrowed connotes some type of agreement, understanding or meeting of the minds between the borrower and lender. Ruiz v. Shell Oil Co., 413 F.2d 310 (5th Cir.1969).
The service agreement which was in effect at the time of Mr. Hall's accident was an agreement for temporary contract job arrangements and provided that CESI would supply Trinity with workers at Trinity's various facilities. Further, Trinity was to compensate CESI for its services in accordance with a rate schedule set forth in the agreement. Trinity agreed not to hire away any CESI employee for at least ninety days so that CESI could recoup its overhead. Additionally, the record contains the affidavit of Cheryl Vila, a personnel director for Trinity, in which she attested to the fact that Trinity and CESI had an understanding that Trinity could remove a worker from its yard if the worker was unacceptable.
Unlike the contracts in Ledet, supra, and Brown v. Union Oil Co. of California, 984 F.2d 674, 677-78 (5th Cir.1993), in which the parties specifically stated that the subcontractor's employees were not to be considered employees of the defendants for any *547 reason whatsoever, the agreement between Trinity and CESI addresses the possibility that CESI employees could be "converted" to Trinity employees. This agreement highlights the fact that CESI was providing employees to Trinity, who, if acceptable, could in time become employees of Trinity. These factors, although not dispositive, weigh heavily in favor of borrowed servant status.

4) Did Mr. Hall acquiesce in the new work situation?

The undisputed facts show that Mr. Hall worked exclusively at the Trinity shipyard during his employment with CESI. Mr. Hall completed the initial job application at the Trinity yard and worked exclusively at that yard. He was supervised by Haroun Kahn, a Trinity employee. In Ledet, the court found these factors to be sufficient for a finding that the employee acquiesced in the work situation. Similarly, we find that the trial court correctly found that Mr. Hall had acquiesced in the work situation at the Trinity shipyard.

5) Did CESI terminate its relationship with Mr. Hall?

In considering this factor, the analysis should focus on the lending employer's relationship with the employee while the borrowing is taking place. Melancon, supra at 1246. The determinative facts, as mentioned above, are: Mr. Hall was supervised exclusively by Trinity employees; Mr. Hall's hours were recorded by Trinity until CESI requested them to write the checks; Mr. Hall had no other contact with CESI. These undisputed facts support a finding of borrowed servant status.

6) Who furnished tools and place for performance?

Mr. Hall testified in his deposition that he only reported to Trinity during his employment with CESI. He further testified that the tools he used to perform his job duties were provided by Trinity. These facts further support the finding that Mr. Hall was a borrowed servant of Trinity.

7) Was the employment over a considerable length of time?

Mr. Hall testified and Trinity stated in its brief that Mr. Hall worked at Trinity for about six months. One day of employment has been found to not bar a finding of borrowed employee status. Capps v. N.L. Baroid-NL Industries, Inc., 784 F.2d 615 (5th Cir.), cert. denied, 479 U.S. 838, 107 S.Ct. 141, 93 L.Ed.2d 83 (1986). In that case, the court found that although a long period of employment would support a finding of borrowed servant status, the converse is not necessarily true. Accordingly, we find a six month period sufficient time for a finding of borrowed servant status.

8) Who had the right to discharge Mr. Hall?

This requirement is met if the borrowing employer has the authority to terminate the employee's work at the job site. Melancon, supra; Brown, supra at 679. Mr. Kahn stated in his deposition that if a CESI worker was no longer needed at Trinity or was unacceptable, Trinity's personnel office would notify CESI, who in turn would inform the employee to no longer report to Trinity. Additionally, Mr. Hall testified at his deposition that he was under the impression that Trinity had the right to fire him. We find this evidence sufficient to support a finding of borrowed servant status.

9) Who had the obligation to pay Mr. Hall?

This factor focuses on who provided the funds that CESI used to pay Mr. Hall. Melancon, supra. The evidence demonstrates that Mr. Hall punched in and out on Trinity's time clock. The service agreement between Trinity and CESI shows that CESI invoiced Trinity based on a pre-arranged rate schedule and the time cards submitted by Trinity. It appears from this evidence that Trinity provided the funds from which Mr. Hall was paid. Thus, this factor also satisfies a finding of borrowed servant status.
Accordingly, we find that the motion for summary judgment filed by Trinity was *548 properly granted. Mr. Hall's only remedy against Trinity is under the LHWCA.
AFFIRMED.
NOTES
[1] We agree with the trial court that this claim arises under general maritime law. Thus, Mr. Hall's remedy would be under the LHWCA, not Louisiana law, as the trial court stated in its reasons for judgment.