714 So.2d 60 (1998)
Richie E. ESPADRON
v.
BAKER-HUGHES, INC.
No. 97-CA-1951.
Court of Appeal of Louisiana, Fourth Circuit.
April 22, 1998.
Andre' G. Bourgeois, Alan P. McGlynn, Navratil, Hardy & Bourgeois, Baton Rouge, for Plaintiff/Appellant Richie E. Espadron.
William H. Eckert, Law Offices of Ungarino & Eckert, Metairie, for Defendant/Appellee Baker-Hughes, Inteq, A Division of Baker-Hughes Oilfield Operations, Inc.
Before SCHOTT, C.J., ARMSTRONG, J., and GULOTTA, J. Pro Tem.
ARMSTRONG, Judge.
This is a maritime workplace personal injury action. Summary judgment was granted in favor of the defendant. Ultimately, the *61 plaintiff's motion for new trial was denied, based upon the borrowed servant defense and the exclusive remedy provisions of the federal Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905. We affirm.
The following facts are undisputed. Plaintiff Richie E. Espadron was injured while working, with a number of other men, unloading a ship of defendant Baker-Hughes, Inc. at Venice, Louisiana. Baker-Hughes had an agreement with Deep Delta, Inc. whereby Deep Delta would supply Baker-Hughes with temporary laborers to supplement Baker-Hughes' own workforce on an as-needed basis. On the date of the accident in question, Baker-Hughes contacted Deep Delta to supply laborers to help unload a Baker-Hughes vessel. Deep Delta foreman Zack Burton came by Mr. Espadron's house and asked him if he wanted to work that evening unloading a ship. Mr. Espadron said that he did. Mr. Burton drove Mr. Espadron and three other laborers to Baker-Hughes' dock, dropped them off there, and then left. The unloading was performed, using a crane, by several Baker-Hughes employees as well as the four laborers dropped off by Mr. Burton. The crane was owned by Baker-Hughes. The dock where the unloading took place was a Baker-Hughes dock. According to Mr. Espadron's own petition, the unloading was done "under the supervision of a Baker-Hughes foreman." Unloading of Baker-Hughes' vessels at the Baker-Hughes dock is a task routinely done by Baker-Hughes and usually performed by Baker-Hughes' own employees. Mr. Espadron was hurt during the unloading operation.
Baker-Hughes moved for summary judgment based upon the statutory employer defense and the exclusive remedy provisions of Louisiana's Workers' Compensation statute. The trial court granted that motion for summary judgment. Mr. Espadron then filed a motion for new trial in which he raised the fact that he had received compensation benefits under the federal Longshore and Harbor Workers' Compensation Act and, therefore, neither the statutory employer defense in particular nor Louisiana's Workers' Compensation statute in general were applicable. Baker-Hughes conceded this point but argued that, under the borrowed servant defense and the exclusive remedy provisions of the federal Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905, it was nevertheless immune from tort liability. The trial court agreed with Baker-Hughes and denied Mr. Espadron's motion for new trial. Mr. Espadron appealed.
The determinative issue on appeal is whether Mr. Espadron was a borrowed servant of Baker-Hughes. If he was, the parties evidently agree, Baker-Hughes is immune from non-intentional tort liability (there is no allegation of intentional tort). Of course, to the extent that the borrowed servant status of Mr. Espadron is a factual issue, summary judgment was proper only if there was no genuine issue of material fact. La.Code Civ. Proc. art. 966 (amended by 1997 Acts 483).
The borrowed servant status of a worker is decided using a nine-factor analysis although the first factor, control over the worker, is the centerpiece of the analysis. The nine factors include:
1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
2) Whose work is being performed?
3) Was there an agreement, understanding or meeting of the minds between the original and the borrowing employer?
4) Did the employee acquiesce in the new work situation?
5) Did the original employer terminate his relationship with the employee?
6) Who furnished the tools and the place for performance?
7) Was the new employment over a considerable length of time?
8) Who had the right to discharge the employee?
9) Who had the obligation to pay the employee?
Howell v. American Casualty Co. of Reading, Pennsylvania, 96-0694 (La.App. 4th Cir. 3/19/97), 691 So.2d 715, 729, writs denied, 97-1329, (La.9/5/97), 700 So.2d 512, 515, 518.
*62 As to the most important factor, control, Mr. Espadron's own deposition testimony establishes that the Deep Delta foreman, Mr. Burton, dropped off Mr. Espadron and the other three Deep Delta laborers at the Baker-Hughes dock and then left. Also, Mr. Espadron's own petition alleges that the unloading was done under the supervision of a Baker-Hughes foreman. Thus, Baker-Hughes had control over Mr. Espadron at the time of the accident.
As to whose work was being performed, the uncontradicted Baker-Hughes and Deep Delta affidavits show that this unloading of Baker-Hughes' ship, at Baker-Hughes' dock, was part of Baker-Hughes' regular work. Thus, this second factor also weighs in favor of Mr. Espadron being a borrowed servant of Baker-Hughes.
As to the third factor, an agreement, understanding or a meeting of the minds between the original and the borrowing employer, the uncontradicted Baker-Hughes and Deep Delta affidavits show that there was an agreement between those two companies by which Deep Delta supplied laborers to Baker-Hughes on an as-needed basis and, in particular, on the occasion of the accident at issue. Thus, this factor also weighs in favor of Mr. Espadron being a borrowed servant of Baker-Hughes.
As to the fourth factor, acquiescence of the employee, Mr. Espadron's deposition testimony is not all that explicit, but it appears that the work situation at the Baker-Hughes dock was as expected and agreed to by Mr. Espadron. Thus, this factor, while not all that clear, appears to weigh in favor of Mr. Espadron being a borrowed servant of Baker-Hughes.
As to the fifth factor, whether the original employer (Deep Delta) terminated its relationship with the worker (Mr. Espadron), it is clear that there was no such termination. This factor weighs against Mr. Espadron being a borrowed servant of Baker-Hughes.
As to the sixth factor, who furnished the tools and the place for performance, it is undisputed that both the crane used for the unloading and the dock where the unloading occurred belonged to Baker-Hughes. Thus, this factor weighs in favor of Mr. Espadron being a borrowed servant of Baker-Hughes.
As to the seventh factor, whether the new relationship (between the worker and the borrowing employer) was over a considerable length of time, Mr. Espadron's work for Baker-Hughes lasted less than a day. Thus, this factor weighs against Mr. Espadron being a borrowed servant of Baker-Hughes.
As to the eighth factor, who had the right to discharge the worker, the record is silent. Thus, this factor cannot be weighed.
As to the ninth factor, who had the obligation to pay the worker, it appears most likely that Mr. Espadron was to be paid by Deep Delta, although the record is not explicit on this point. However, it also appears that Deep Delta directly passed on this cost (presumably, plus markup) to Baker-Hughes. Thus, this factor is somewhat mixed as to whether Mr. Espadron was a borrowed servant of Baker-Hughes.
Five of the factors weigh in favor of Mr. Espadron being a borrowed servant of Baker-Hughes, two weigh against that conclusion, one factor is mixed and one cannot be weighed. The most important factor, control, clearly weighs in favor of Mr. Espadron being a borrowed servant of Baker-Hughes. The substance of the transaction between Deep Delta and Baker-Hughes is that Deep Delta acted as a labor broker rather than a performing contractor. Consequently, as a borrowed servant of Baker-Hughes, Mr. Espadron, while entitled to compensation benefits (which he has received), may not bring a claim against Baker-Hughes for non-intentional tort. 33 U.S.C. § 905.
Mr. Espadron also argues that the borrowed servant defense is an affirmative defense, which must be specifically pleaded by the defendant, and that Baker-Hughes did not plead that defense. Assuming, without deciding, that the borrowed servant defense is an affirmative defense such that it must be specifically pleaded, see La.Code Civ. Proc. arts. 1003, 1005, we do not see any reversible error under the circumstances of this case. Baker-Hughes did plead that: "Furthermore, defendant hereby affirmatively pleads that it is immune from tort liability on the *63 grounds that defendant was the statutory employer[.]." Thus, the employment relation and tort immunity were raised in the pleadings although the statutory employer defense (applicable under Louisiana's Workers' Compensation statute), rather than the borrowed servant defense (applicable under the LHWCA), was specifically mentioned.
Also, Mr. Espadron did not raise the fact that he had received LHWCA benefits, so that the LHWCA was applicable, until after the trial court granted Baker-Hughes' motion for summary judgment. Specifically, Mr. Espadron first raised the applicability of the LHWCA upon his motion for new trial. No doubt, had Mr. Espadron raised the LHWCA sooner, Baker-Hughes would have pleaded the borrowed servant defense.
In any case, we are satisfied that the facts of this case are clear and were clearly established by the affidavits and Mr. Espadron's deposition, so there was no possible prejudice to Mr. Espadron even if he was "surprised" by the borrowed servant defense. As there was no possible prejudice, we will not remand for the empty formality of Baker-Hughes amending its answer to add the phrase "borrowed servant."
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.