| JETERS, Judge.
This appeal involves the issue of borrowed employee status in the context of the Longshore and Harbor Workers’ Compensation Act (LHWCA), 33 U.S.C.A. § 901, et seq. The plaintiff, Louis Jones, appeals from an adverse summary judgment on the issue in favor of Lena Laine d/b/a Paul Laine Company, a defendant in the case.
DISCUSSION OF THE RECORD
Lena Laine d/b/a Paul Laine Company (PLC) was in the business of leasing cranes and barges to companies and providing bulkhead and erosion control services. Compression Coat Corporation (Compression Coat), an oilfield-related business, was in the business of coating pipes. In connection with its operations, Compression Coat leased a barge and crane from PLC. Pursuant to that lease, PLC provided Compression Coat with an LS-418 barge-mounted crane and an operator, Mark Hanks. Hanks’ duties included using the crane to load pipe from a dock onto barges.
Louis Jones, who was working at the Compression Coat facility, claims he sustained injuries on July 25, 1994, when he became entangled in a tag line used in connection with the crane operations. He filed the instant suit for personal injury damages against Compression Coat and PLC. In his petition, Jones alleged that he was employed by Link Personnel Concepts, Inc. d/b/a Link Staffing Services (Link Staffing) as a longshoreman, that Link Staffing had assigned him to load the pipe onto the barge, and that he injured his back “when [Hanks] picked up on a pipe and caught [him] in the sling which threw him into the water.”
Link Staffing and The Insurance Company of the State of Pennsylvania, Link Staffing’s workers’ compensation carrier, (hereafter referred to collectively as inter-venors) intervened in the suit, seeking reimbursement for payment of 12compensation benefits, medical expenses, mileage, and other expenses and a credit against the payment of any such items in the future.
Compression Coat filed a motion for summary judgment contending that Jones was its borrowed employee and that, therefore, he had no tort claim against it. The trial court granted the motion and dismissed Jones’ claim and the petition for intervention against Compression Coat. Neither Jones nor the intervenors appealed that judgment.
Subsequently, PLC filed a motion for summary judgment contending that Hanks, its “nominal” employee, was also the borrowed employee of Compression Coat such that Jones and Hanks were co-employees. PLC contended, therefore, that Jones was precluded under the *508 LHWCA from maintaining a tort action against it as the “nominal” employer of Hanks. The trial court granted PLC’s motion for summary judgment and dismissed Jones’ claim and the petition of intervention against it. It is from this judgment that Jones and the intervenors appeal.
OPINION
On appeal, the intervenors contend that the trial court erred in finding that Hanks was a borrowed employee of Compression Coat. Jones raises the same issue on appeal. However, Jones further contends that, even if Hanks were a borrowed employee of Compression Coat, the trial court still erred in dismissing his complaint against PLC because, under Morgan v. ABC Manufacturer, 97-0956 (La.5/1/98); 710 So.2d 1077, the “dual employer” doctrine, which allows both the general employer and special employer to be solidarily liable for the torts of the borrowed employee, prevents PLC from asserting immunity for the negligence of Hanks.
In Morgan, Worktec Temporaries, Inc., which was in the business of hiring out |3temporary employees to other businesses, provided one of its employees, Daryl Hines, to Goldin Industries of Louisiana, Inc. to work in Goldin’s yard. Gol-din’s employee, Edward Morgan, was severely injured when he was struck by a large piece of scrap iron that fell from a crane, which Morgan alleged was negligently hooked to the crane by Hines. Morgan sued Worktec in tort under the theory of respondeat superior, but Work-tec asserted that it was not liable as Hines’ employer because Hines had become the borrowed employee of Goldin.
A jury found that Hines was the borrowed employee of Goldin, and the trial court entered judgment in favor of Work-tec, dismissing Morgan’s suit. The court of appeal affirmed. The supreme court reversed, rejecting the idea that an employee could have only one employer at a time for purposes of tort liability. In so doing, the supreme court reaffirmed its prior jurisprudence which had held that both the special and general employers may be solidarily liable for the torts of a borrowed employee. Further, the supreme court expanded on that rule and concluded that, “where a general employer is engaged in the business of hiring out its employees under the supervision of another employer, the general employer remains liable for the torts of the ‘borrowed’ employees.” Id. at 1078.
Importantly, Morgan did not involve the LHWCA but involved state workers’ compensation law. This distinction is critical in the instant case.[1]
Specifically, Jones admitted in his petition that he was a longshoreman at the time of the accident, and PLC affirms in its appellate brief that the case is governed |4by the LHWCA. Section 933(i) of the LHWCA provides:
The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured, or to his eligible survivors or legal representatives if he is killed, by the negligence or wrong of any other person or persons in the same employ: Provided, That this provision shall not affect the liability of a person other than an officer or employee of the employer.
(Emphasis added.)
Borrowed servants/co-employees of the same employer are “persons in the *509 same employ” for purposes of the LHWCA. Perron v. Bell Maintenance & Fabricators, Inc., 970 F.2d 1409 (5th Cir.1992), cert. denied, 507 U.S. 913, 113 S.Ct. 1264, 122 L.Ed.2d 660 (1993). Under 33 U.S.C.A. § 933(i), payment under the LHWCA is the injured co-employee’s exclusive remedy. Id. Further, the prohibition against suits between co-employees under the LHWCA is not merely a personal defense but may be claimed by the negligent co-employee’s solidary obligors. Id. A vicariously liable nominal employer and its negligent nominal employee who was a borrowed servant/co-employee to the injured party are solidary obligors. Id. Consequently, the injured employee may not assert against the nominal employer of his injuring co-employee his right to sue in tort because that right is nonexistent against the injuring co-employee. Id.
In Perron, Winston Perron and Michael Lee were borrowed co-employees of Gulf Oil and nominal employees of different employers. Perron allegedly slipped and fell due to oil left on a production platform by Lee. Perron sued Lee’s nominal employer, Bell Maintenance & Fabricators Co., under a theory of respondeat superior. The Fifth Circuit held that, consistent with the LHWCA’s comprehensive scheme, Perron was prohibited from doing so. The court explained that “the LHWCA payments are substituted for any right Perron might have had to sue Lee’s employer 15under respondeat superior.... Perron cannot assert against Bell, the employer, his non-existent right against Lee, its employee.” Id. at 1413 (emphasis added).
In Morgan, 710 So.2d 1077, the supreme court noted that the tort immunity of the borrowing employer, Goldin, was a result of Louisiana Workers’ Compensation Law, La.R.S. 23:1032. The court also noted the quid pro quo under the workers’ compensation scheme whereby employers are liable for benefits and medical expenses resulting from work accidents regardless of the employees’ contributory negligence, while simultaneously the employees’ tort remedies against these employers are curtailed. However, the court added: “There is no such quid pro quo found in the jurisprudential application of the borrowed employee defense.” Id. at 1082 n. 10. Further, finding no legislative expression regarding the borrowed employee defense, the court stated: “The immunity provided to the general employer is in derogation of the general tort rights of victims. Thus the scope of the immunity must be strictly construed.” Id. at 1082.
Importantly, the court in Morgan implicitly rejected the notion that any immunity that might be afforded to Hines under the workers’ compensation scheme would flow to Worktec to insulate it from Morgan’s tort suit. Such a construction is consistent with La.R.S. 9:3921(A), which provides:
Notwithstanding any provision in Title III of Code Book III of Title 9 of the Louisiana Revised Statutes of 1950 to the contrary, every master or employer is answerable for the damage occasioned by his servant or employee in the exercise of the functions in which they are employed. Any remission, transaction, compromise, or other conventional discharge in favor of the employee, or any judgment rendered against him for such damages shall be valid as between the damaged creditor and the employee, and the employer shall have no right of contribution, division, or indemnification from the employee nor shall the employer be allowed to bring any incidental action under the provisions of Chapter 6 of Title I of Book II of the Louisiana Code of Civil Procedure against such employee.
1 fi(Footnotes omitted.)
In A Primer on the Patterns of Louisiana Workplace Torts, 55 La.L.Rev. 71, 97 (1994), Thomas C. Galligan, Jr., explains that under this “statute it appears that an employer remains vicariously liable for the torts of his employee, even after the plaintiff has settled with that same employee,” and he finds in this statute “a legislative *510 perception that the enterprise (employer) remains liable even when the employee is not.” According to Galligan, an important principle of vicarious liability is that “the employer is a real tortfeasor.” Id. at 84. Noting that the borrowed employee situation presents a different but related matter, he queries: “Can the employer be liable where the employee is personally immune? If holding the general employer liable is consistent with applicable social policies concerning enterprise liability, then why not? In the family situation, we hold a liability insurer liable even though the insured spouse (or parent) is immune.” Id. at 97-98. Thus, it appears that, under state law, any immunity afforded a borrowed co-employee is not imputed to his general employer.
However, because the instant case involves the LHWCA, Morgan is inapplicable. Importantly, “the comprehensive scheme known as the Longshoremen’s and Harbor Workers’ Act is the whole source of rights and remedies.” Nations v. Morris, 483 F.2d 577, 588 (5th Cir.), cert. denied, 414 U.S. 1071, 94 S.Ct. 584, 38 L.Ed.2d 477 (1973). Section 933(i) of the LHWCA “completely obliterates the rights at common, civil or maritime law against ... [a] fellow employee.” Id. at 587. “Consistent with the LHWCA’s comprehensive scheme,” the injured coworker of the borrowed employee is barred from bringing a respondeat superior action against the borrowed employee’s general/nominal employer. Perron, 970 F.2d at 1412. Having found no Louisiana 17Supreme Court jurisprudence to the contrary on the specific issue before us under the LHWCA, we agree with Perron that the nominal employer of a negligent borrowed employee/co-employee is vested with the tort immunity afforded its nominal employee under the LHWCA. Accord, Foster v. Consolidated Employment Sys., Inc., 98-948 (La.App. 5 Cir. 1/26/99); 726 So.2d 494, unit denied on showing, 99-0523 (La.4/30/99); 741 So.2d 14; Foreman v. Danos & Curole Marine Contractors, Inc., 97-2038 (La.App. 1 Cir. 9/25/98); 722 So.2d 1, writ denied, 98-2703 (La.12/18/98); 734 So.2d 637.
Thus, we reject Jones’ contention that, regardless of his borrowed employee status in relation to Compression Coat, PLC is prevented from asserting immunity for the negligence of Hanks. As a matter of law, under the LHWCA, if Hanks was the borrowed employee of Compression Coat, then PLC is entitled to immunity from the tort suit. We now turn to the issue of whether the trial court properly granted summary judgment on the issue of Hanks’ borrowed employee status.
A motion for summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ.P. art. 966(B). The burden of proof remains with the party moving for summary judgment. La.Code Civ.P. art. 966(C)(2).
There are nine factual inquiries used to determine borrowed employee status in LHWCA cases:
1. Who had control over the employee and his work, beyond the mere suggestion of details or cooperation?
2. Whose work was being performed?
3. Was there an agreement between the general (nominal) and the Isborrowing employer?
4. Did the employee acquiesce in the new work situation?
5. Did the general (nominal) employer terminate his relationship with the employee?
6. Who furnished the tools and the place for the work?
7. Was the new employment over a considerable length of time?
8. Who had the right to discharge the employee?
*511 9. Who was responsible for paying the employee?
Ledet v. Quality Shipyards, Inc., 615 So.2d 990 (La.App. 1 Cir.1993).

1.Control

An employee is considered to be borrowed for purposes of workers’ compensation when his general employer relinquishes control to the borrowing employer. Id.; Hall v. Equitable Shipyard, Inc., 95-1754 (La.App. 4 Cir. 2/29/96); 670 So.2d 543. Jack Wright, Compression Coat’s plant superintendent at the time of the accident, attested in his affidavit that Hanks was working at all times under the direct supervision and control of Compression Coat. Further, Wright asserted that, once on location, the crane barge provided by PLC was directed and controlled exclusively by Compression Coat. Paul Laine, Jr., vice president of PLC, stated in his affidavit that PLC turned Hanks over to Compression Coat for purposes of all direction, instruction, supervision, and other matters pertaining to the operations of Compression Coat and that PLC gave no directions or orders to Hanks regarding his job duties while working for Compression Coat. Further, Laine attested that once the crane and barge were tendered to Compression Coat, Compression Coat maintained total control and possession of the equipment. Additionally, Laine stated that Hanks was assigned to work exclusively for Compression Coat between July 15, 1991 and July 25, 1994.
However, Laine’s deposition testimony appears to conflict somewhat with his affidavit assertions. In his deposition, Laine estimated that Hanks had been working | flfor PLC for at least ten years. He agreed that, while Hanks may have been the one who worked for Compression Coat during the three-year period in question, Hanks also worked at other jobs. He also agreed that Hanks “was just [PLC’s] main operator that operated the 418 and the 418 happened to be the crane that was at Compression Coat during this time period.” Laine also testified that the crane, which was first used with Compression Coat in 1987, had been used “a good 80 percent of the time” on that particular job and twenty percent of the time on other jobs. According to Laine, if Compression Coat did not need the crane for a certain day, Hanks could go to PLC’s shop and put in his hours.
When asked whether Compression Coat had the authority to remove Hanks from the crane and make him do other work, Laine testified that Hanks was there just to operate the crane. Laine further testified that Compression Coat did not have the authority to remove Hanks and put one of its own employees on the crane. He also explained Hanks’ authority to shut the crane down if he discovered a problem with it. Additionally, Laine testified that PLC had no rules for the operation of the crane but that it would require that there be a signal man furnished under certain circumstances. Thus, the evidence submitted is conflicting on this factor.

2. Work Performed

At the time of the alleged accident, Hanks was loading pipes, which was Compression Coat’s work.

3. Agreement

The term “borrowed” connotes some type of agreement or understanding between the borrower and lender. Hall, 670 So.2d 543. It is undisputed in this case that PLC and Compression Coat had a lease agreement for the crane and barge, which Imincluded the provision of a crane operator.
A Acqtdescence in New Employment
Although the testimony is not clear about the exact amount of time Hanks spent operating the crane for Compression Coat, it is clear that he spent a considerable amount of time doing so. This is sufficient to support a finding of acquiescence.

5. Termination of Employment Relationship

In considering this factor, the analysis should focus on the lending em *512 ployer’s relationship with the employee during the time that the borrowing occurred. Id. This factor does not require a lending employer to completely sever its relationship with the worker. Foreman, 722 So.2d 1. Rather, this factor requires that the nominal employer place no restrictions its employee’s employment conditions. Id.
As set forth under the first factor in the analysis, the evidence is somewhat conflicting in this regard. From the affidavits of Wright and Laine, it appears that PLC basically turned Hanks over to Compression Coat while he was working for Compression Coat. However, Laine’s deposition testimony indicates that Compression Coat’s authority was not so pervasive. Rather, from the deposition testimony, it appears that Hanks was there just to operate the crane and that Compression Coat did not have the authority to remove Hanks from the crane and put one of its own employees on the crane. Further, according to Laine’s deposition testimony, if Compression Coat did not need the crane for a certain day, Hanks could go to PLC’s shop and put in his hours. Further, Hanks received the same amount of pay whether he was in the PLC shop or operating the crane at the Compression Coat facility. Importantly, he agreed that Hanks “was just [PLC’s] main operator that operated the 418 and the 418 happened to be the crane that was at Compression Coat In during this time period.” Thus, the evidence is conflicting on this factor as well.

6.Fumishment of Tools and Facility

Clearly, Compression Coat provided the facility, but PLC provided the crane and barge. The affidavits of Wright and Laine assert that Compression Coat provided certain tools and equipment including cables, hooks, a spreader bar, and tag lines. In his deposition, Laine testified that PLC provided the hook but that Compression Coat provided spreader bars, tag lines, and everything else.

7. Length of New Employment

Hanks worked for Compression Coat for about three years, but Laine testified that Hanks also worked at other jobs during that time, although he attested in his affidavit that Hanks was assigned to work exclusively for Compression Coat during that period.

8. Right to Terminate

This requirement is met if the borrowing employer has the authority to terminate the worker’s work at the job site in question. Hall, 670 So.2d 543. In his affidavit, Laine attested that Compression Coat enjoyed the right to terminate Hanks’ employment with Compression Coat. Wright also attested that Compression Coat had the right to instruct PLC not to send a particular employee to work at its facility. Laine also testified in deposition that if Compression Coat had indicated that it did not like the way Hanks was operating the crane, PLC would have changed operators.

9. Payment of Wages

This factor focuses on who provided the funds used to pay the worker. Id. According to Laine, PLC leases the crane and operator for a certain price per hour and then PLC pays the crane operator out of those funds. Hanks kept track of the 11 ¡.number of hours Compression Coat used the crane. He turned those hours in to Compression Coat for verification and then over to PLC. According to Laine, as Hanks was receiving raises, PLC never made a corresponding increase in the charges to Compression Coat. PLC also provided Hanks with a company truck with no restrictions on personal use, hospitalization and automobile insurance, fuel, and a Christmas bonus. We have found no indication that these benefits were derived from funds provided by Compression Coat.
If Hanks is found to have been Compression Coat’s borrowed employee, then, at the time of the alleged accident, he was the co-employee of Jones, who *513 himself was a borrowed employee of Compression Coat. If Hanks was Jones’ co-employee, then PLC is entitled to tort immunity under the LHWCA. Although the issue of borrowed employee status is a legal one for the court to determine, there are nine factual inquiries underlying this determination. Id. In the instant case, some of the evidence is conflicting. Additionally, some of the factors point toward a finding that Hanks was Compression Coat’s borrowed employee while others do not. Thus, we find that summary judgment on this issue was improper due to the genuine issues of material fact in dispute.
DISPOSITION
For the foregoing reasons, we reverse the summary judgment and remand for further proceedings consistent with this opinion. We assess costs of this appeal to PLC.
REVERSED AND REMANDED.

. We note that other cases have not applied Morgan in the context of the LHWCA. See Ortega v. Semco, L.L.C., 99-1295 (La.App. 5 Cir. 5/30/00); 762 So.2d 276; Foster v. Consolidated Employment Sys,, Inc., 98-948 (La.App. 5 Cir. 1/26/99); 726 So.2d 494, writ denied on showing, 99-0523 (La.4/30/99); 741 So.2d 14; Dyer v. Service Marine Indus., Inc., 97-2622 (La.App. 1 Cir. 12/28/98); 723 So.2d 1135; Foreman v. Danos & Curole Marine Contractors, Inc., 97-2038 (La.App. 1 Cir. 9/25/98); 722 So.2d 1, writ denied, 98-2703 (La.12/18/98); 734 So.2d 637.