892 So.2d 21 (2005)
Kelvin P. WELLS, Theodore B. Patterson, Jr. and Johnny Comena
v.
Timothy TRAYNOR, Projects Equipment Company, Inc., ABC Insurance Company, Wire Rope Corporation of America, Inc., DEF Insurance Company, Forest Lines, Inc., and/or V and M, Inc., and/or Herfurth Co. and GHI Insurance Company.
No. 2004-CA-0064.
Court of Appeal of Louisiana, Fourth Circuit.
December 1, 2004.
Rehearing Denied January 14, 2005.
*23 Kelvin Wells, in Proper Person, Plaintiff/Appellant.
Stephen R. Barry, Barry, Piccione & Dyess, APLC, New Orleans, LA, for Defendant/Appellee.
*24 (Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS JR.).
MICHAEL E. KIRBY, Judge.
Plaintiff, Kelvin Wells, appeals the trial court judgment granting summary judgment in favor of defendants, Timothy Traynor and Projects Equipment Company, Inc. We affirm.

STATEMENT OF FACTS:
On November 22, 1997, Theodore Patterson, Sr., a longshoreman employed by Transocean Terminal Operators ("TTO"), was seriously injured at TTO's Henry Clay Wharf in New Orleans when a sling carrying a load of pipes broke and fell on him. He subsequently died from his injuries. The plaintiffs in this case originally included Theodore Patterson's surviving spouse and five adult children, but only Kelvin Wells, one of the adult sons of Theodore Patterson, has appealed the trial court judgment. Included, among others, as defendants in this matter were Timothy Traynor, the crane operator who was operating the crane at the time the load of pipes fell, and Projects Equipment Company, Inc. ("PEC"), the employer of Mr. Traynor and the lessor of the crane and strap leased by TTO and being used at the time of the accident.
Defendants, Mr. Traynor and PEC, filed a motion for summary judgment, asking that the claims asserted against them by plaintiffs be dismissed. Defendants contend that the undisputed facts in this litigation establish that, at the time of Theodore Patterson's accident, Mr. Traynor was the borrowed employee of TTO, and, therefore, plaintiffs' exclusive remedy is against TTO for compensation benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"). In support of their motion, defendants submitted a memorandum and a statement of uncontested material facts. Also attached as exhibits in support of defendants' motion are: 1) plaintiffs' petition for damages; 2) the PEC/TTO Agreement of usage and rates on PEC cranes; 3) the affidavit of Timothy Traynor; 4) the TTO Gear and Equipment Order Sheet; 5) the PEC Equipment Rental  Daily Time Sheet; and 6) a copy of the Third Circuit's opinion in Jones v. Compression Coat Corp., XXXX-XXXX (La.App. 3 Cir. 11/2/00), 776 So.2d 505.
In opposition to defendants' motion for summary judgment, plaintiff, Kelvin Wells, filed a memorandum. Attached as exhibits to plaintiff's opposition are: 1) a safety narrative regarding the accident; 2) an accident report; and 3) the death certificate of Theodore Patterson, Sr.
On November 7, 2003, the trial court granted the defendants' motion for summary judgment, dismissing plaintiffs' petition for damages at their costs. Plaintiff, Kelvin Wells, has appealed.
On appeal, Mr. Wells argues that the trial court erred in granting summary judgment in favor of defendants. The gist of Mr. Wells' brief is that Mr. Traynor should not be considered a co-employee of Mr. Patterson, and that there are questions of fact as to how exactly this accident occurred.

DISCUSSION:
Appellate courts review the granting of summary judgment de novo under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480, p. 2 (La.4/11/94), 634 So.2d 1180, 1182; Alexis v. Southwood Ltd. Partnership, XXXX-XXXX, p. 2 (La.App. 4 Cir. 7/18/01), 792 So.2d 100, 101. The summary judgment procedure is designed to secure the just, speedy and inexpensive *25 determination of actions. Two Feathers Enterprises, Inc. v. First National Bank of Commerce, 98-0465, p. 3 (La.App. 4 Cir. 10/14/98), 720 So.2d 398, 400. This procedure is now favored and shall be construed to accomplish those ends. La. C.C.P. art. 966 A(2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. If the court finds that a genuine issue of material fact exists, summary judgment must be rejected. Oakley v. Thebault, 96-0937, p. 3 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490. The burden does not shift to the party opposing the summary judgment until the moving party first presents a prima facie case that no genuine issues of material fact exist. Id. At that point, the party opposing the motion must "make a showing sufficient to establish existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial." La. C.C.P. art. 966(C).
The grounds for defendants' motion for summary judgment are that Mr. Traynor was the borrowed employee of TTO at the time of Theodore Patterson's accident, and, therefore, plaintiff's exclusive remedy is against TTO for compensation benefits under the LHWCA. In the case of Jones v. Compression Coat Corp., XXXX-XXXX, p. 4 (La.App. 3 Cir. 11/2/00), 776 So.2d 505, 508-509, the Third Circuit stated:
Borrowed servants/co-employees of the same employer are "persons in the same employ" for purposes of the LHWCA. Perron v. Bell Maintenance & Fabricators, Inc., 970 F.2d 1409 (5th Cir.1992), cert. denied, 507 U.S. 913, 113 S.Ct. 1264, 122 L.Ed.2d 660 (1993). Under 33 U.S.C.A. § 933(i), payment under the LHWCA is the injured co-employee's exclusive remedy. Id. Further, the prohibition against suits between co-employees under the LHWCA is not merely a personal defense but may be claimed by the negligent co-employee's solidary obligors. Id. A vicariously liable nominal employer and its negligent nominal employee who was a borrowed servant/co-employee to the injured party are solidary obligors. Id. Consequently, the injured employee may not assert against the nominal employer of his injuring co-employee his right to sue in tort because that right is nonexistent against the injuring co-employee. Id.

Accordingly, in the instant case, plaintiff cannot sue Mr. Traynor or Mr. Traynor's nominal employer, PEC, in tort if Mr. Traynor was the borrowed servant of TTO at the time of the accident causing Mr. Patterson's injuries and subsequent death.
The issue of borrowed servant status is a legal issue for the court to decide. Hall v. Equitable Shipyard, Inc., 95-1754, p. 4 (La.App. 4 Cir. 2/29/96), 670 So.2d 543, 545. In the Hall case, this Court listed the following nine factual questions used to determine borrowed employee status in LHWCA cases:
(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation? (2) Whose work is being performed? (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer? (4) Did the employee acquiesce in the new work situation? (5) Did the original employer terminate his relationship with the employee? (6) Who furnished tools and place for performance? (7) Was the new employment over a considerable length of time? (8) Who had the right to discharge the *26 employee? (9) Who had the obligation to pay the employee?
Id. at p. 4, 670 So.2d at 545-546.

1) Who had control over the employee?

Control over the worker is the most important of these nine factors. Espadron v. Baker-Hughes, Inc., 97-1951, p.3 (La.App. 4 Cir. 4/22/98), 714 So.2d 60, 62. An employee is considered borrowed for workers' compensation purposes when his general employer gives up control to the borrowing employer. Hall v. Equitable Shipyard, Inc., 95-1754, p.4 (La.App. 4 Cir. 2/29/96), 670 So.2d 543, 546. The uncontroverted affidavit of Mr. Traynor established that he reported directly to the TTO job site on November 22, 1997, received his assignment from TTO's supervising foreman and was at all times under the direct supervision of TTO's foreman and superintendent. There was no PEC supervising employee present while Mr. Traynor operated the crane at the TTO job site, and TTO and its foreman had the right to discharge Mr. Traynor from his job duties. Defendants established that TTO had control over Mr. Traynor.

2) Whose work was being performed?

Mr. Traynor's affidavit states that all of his work performed at the TTO job site related to TTO's unloading operations. Plaintiff presented no evidence to controvert that statement. Defendants established that Mr. Traynor was performing TTO's work at the time of the accident.

3) Was there an agreement, understanding or meeting of the minds between PEC and TTO?

The documentation offered in support of the motion for summary judgment shows that TTO agreed to lease cranes from PEC, and that PEC provided Timothy Traynor to TTO to operate the cranes for the unloading operation. Traynor reported directly to the TTO site, and was supervised solely by TTO personnel while at that job site. Defendants established that there was a "meeting of the minds" between TTO and PEC that Traynor would be TTO's borrowed employee while working at the TTO job site.

4) Did the employee acquiesce in the new work situation?

Mr. Traynor's affidavit establishes that he reported directly to the TTO job site, and received his daily work assignment from TTO's supervising foreman. There is no evidence that Mr. Traynor objected to his work assignments while at TTO. The statements in Mr. Traynor's affidavit sufficiently support a finding of acquiescence on his part in his work situation at TTO.

5) Did PEC terminate its relationship with Mr. Traynor?

This factor evaluates the lending employer's relationship with the employee while the borrowing occurs. Foreman v. Danos and Curole Marine Contractors, Inc., 97-2038, p. 11 (La.App. 1 Cir. 9/25/98), 722 So.2d 1, 6. This factor does not require a lending employer to completely sever its relationship with the employee. Id. In order to find that a relationship has been terminated, this factor requires that the nominal employer place no restrictions upon the employment conditions of its employee. Id.
According to Mr. Traynor's affidavit, PEC's only involvement with Traynor regarding Traynor's operation of a crane for TTO was a telephone call from a PEC employee notifying him about the TTO job. Defendants also admit that Mr. Traynor collected his paycheck from PEC. Otherwise, he reported directly to the TTO work site, received his assignments from TTO personnel and was supervised by TTO personnel. *27 Mr. Traynor specified that no PEC supervising employee was ever present while he operated the crane at the TTO site. This evidence establishes that PEC's involvement with Mr. Traynor while working at the TTO job site was minimal.

6) Who furnished the tools and place for performance?

It is undisputed that the unloading operations were performed at TTO's job site. As for the tools used in the job, Mr. Traynor stated in his affidavit that other than the crane itself, all equipment involved in the unloading operations belonged to TTO. This other equipment included slings, cable legs and hooks, and a spreader bar. Plaintiff has not presented any contradictory evidence on this issue. The evidence presented by defendants as to this factor establishes that this was a borrowed employee situation. See, Foreman v. Danos and Curole Marine Contractors, Inc., supra.

7) Was the new employment over a considerable length of time?

In the contract formalized between TTO and PEC on August 22, 1997, the parties agreed that PEC would provide TTO with three to four cranes, three to four days, every two weeks. The contract did not include a termination date. The accident at issue occurred on November 22, 1997, three months after the contract for usage between TTO and PEC was executed.
Where the length of time the employee has worked for the borrowing employer is considerable, this factor is significant and supports a finding that the employee was a borrowed employee. Foreman v. Danos and Curole Marine Contractors, Inc., 97-2038, p. 7 (La.App. 1 Cir. 9/25/98), 722 So.2d 1, 7. However, the converse is not true, and employments of short duration will generally require a finding of neutrality as to this factor. Id. at pp. 12-13, 722 So.2d at 7. In Capps v. N.L. Baroid-NL Industries, Inc., 784 F.2d 615 (5th Cir.1986), the court found that one day of employment did not bar a finding of borrowed employee status.
The evidence presented in support of the motion for summary judgment only confirms that Mr. Traynor worked at the TTO site on November 22, 1997. As in the Capps case, this factor is neutral as to Mr. Traynor's status and does not bar a finding of borrowed employee status.

8) Who had the right to discharge Mr. Traynor?

This requirement is met if the borrowing employer has the authority to terminate the employee's work at the job site. Hall v. Equitable Shipyard, Inc., 95-1754, p. 8 (La.App. 4 Cir. 2/29/96), 670 So.2d 543, 547. Mr. Traynor stated in his affidavit that TTO and its foreman always maintained the right to discharge him. Plaintiff did not present any evidence to refute that statement.

9) Who had the obligation to pay Mr. Traynor?

This factor focuses on who provided the funds that PEC used to pay Mr. Traynor. See, Jones v. Compression Coat Corp., XXXX-XXXX, p. 11 (La.App. 3 Cir. 11/2/00), 776 So.2d 505, 512; Hall v. Equitable Shipyard, Inc., supra. Under the General Conditions section of the TTO/PEC Equipment Rental/Daily Time Sheet, PEC set forth the terms and conditions as to how payments to its operators are calculated. The inclusion of this provision in the rental agreement, which was signed by a TTO representative, sufficiently establishes that TTO was responsible for funding the payments made by PEC to Mr. Traynor.
*28 In the instant case, the defendants established that Mr. Traynor was a borrowed employee of TTO at the time of the accident. The burden then shifted to plaintiff to produce factual support sufficient to establish that a genuine issue of material fact existed on the issue of Mr. Traynor's borrowed employee status. He failed to do so. Therefore, summary judgment in favor of Mr. Traynor and PEC was properly granted. Plaintiff's exclusive remedy is against TTO for benefits under the LHWCA.
For the reasons stated above, the trial court judgment is affirmed.
AFFIRMED.