968 So.2d 783 (2007)
Aguillard SANCHEZ
v.
HARBOR CONSTRUCTION CO., INC.
No. 2007-CA-0234.
Court of Appeal of Louisiana, Fourth Circuit.
October 3, 2007.
*784 David W. Bernberg, Henna Ghafoor, The Law Office of David W. Bernberg, L.L.C., New Orleans, LA, for Plaintiff/Appellant.
Richard S. Vale, Pamela F. Noya, Blue Williams, L.L.P. Metairie, LA, for Defendants/Appellees.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE).
PATRICIA RIVET MURRAY, Judge.
This is a tort suit. The sole issue presented in this appeal is whether the trial court erred in finding that the plaintiff, Aguillard Sanchez, was the borrowed servant of the defendant, Harbor Construction Co., Inc. ("Harbor"), at the time of his personal injury and thus dismissing on summary judgment Mr. Sanchez's tort suit against Harbor; Harbor's general liability and maritime insurer, the Gray Insurance Company; and one of Harbor's employees, Thai Nguyen. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Global Fabrication and Welding ("Global") is a temporary labor service that supplies Harbor with workers on an "as needed" basis. Harbor is a general construction company. On August 8, 2002, Harbor contacted Global and requested a welder for the next day. On August 9, 2002, Global sent Mr. Sanchez to Harbor's jobsite, which was at the Napoleon Avenue Wharf. Global instructed Mr. Sanchez to report to Harbor's foreman. On his first day on the job, Mr. Sanchez was injured when a 500,000 gallon diesel fuel tank fell from the forklift that one of Harbor's employees, Mr. Nguyen, was operating. This tort suit followed.
In March 2005, Harbor filed a motion for summary judgment contending that Mr. Sanchez was its borrowed servant at the time of the accident, and, therefore, his exclusive remedy is worker's compensation benefits.[1] In support, Harbor relied on the affidavit of its general superintendent, Sullivan Perry, who attested that on August 9, 2002, Mr. Sanchez was working at a Harbor job site pursuant to a "long-standing agreement" under which Global would provide laborers to work at Harbor job sites. Opposing the first summary judgment, Mr. Sanchez and Global emphasized the lack of a written contractual agreement between the parties. In support, Global provided the affidavit of its owner and president, Michelle Hebert, who attested that on August 8, 2002, there was no written contract between Harbor and Global. On July 29, 2005, the trial court denied the motion for summary judgment.
On August 10, 2006, Harbor[2] filed a second motion for summary judgment *785 again arguing that Mr. Sanchez was its borrowed servant. In support, it provided new evidence: Ms. Hebert's deposition testimony acknowledging that her statement in her affidavit that there was no written agreement in effect between Harbor and Global at the time of the accident was inaccurate. Harbor also provided a copy of the written contract itself, entitled the "Master Service Agreement." This contract provided the basic terms and conditions of the relationship between Harbor and Global. Additionally, Harbor provided the deposition testimony of Mr. Perry, who testified regarding the relationship between Harbor and Global.
Opposing the summary judgment, Mr. Sanchez contended that the following factual discrepancies precluded summary judgment:
 The accident occurred on premises other than that of Harbor while work was being done for Impsa at the Napoleon Street Wharf.
 Mr. Sanchez's employer, Global, completed an accident report and no accident report was completed by Harbor.
 The written agreement between Harbor and Global mandated that Global was to carry worker's compensation insurance, insuring Mr. Sanchez for any work related incidents  this is prima facie proof of employment.
 A policy of liability and maritime insurance was issued by Gray in favor of Harbor and this policy makes no mention for additional employees or additional insureds of other companies including those of Global. There was no worker's compensation coverage that was available to Mr. Sanchez that was provided by Harbor.
 Ms. Hebert stated that she had the ultimate authority of whether to hire or fire Mr. Sanchez.
 Global provided its own safety meetings for its own employees and these were attended by Mr. Sanchez as evidenced by the accident report completed by Global. The safety minutes of Harbor show that Mr. Sanchez did not attend any of these meetings, was never instructed on the safety policies of Harbor, and was not provided with a copy of their safety manuals or instruction booklets.
 Mr. Ed Cronic, a Global employee, was Mr. Sanchez's first line supervisor and completed the accident report following Mr. Sanchez's injury.
 Global paid Mr. Sanchez his salary.
On August 2, 2006, the trial court granted Harbor's motion for summary judgment and dismissed all claims by Mr. Sanchez against it pursuant to La. R.S. 23:1031.[3] This appeal followed.

STANDARD OF REVIEW
"Favored in Louisiana, the summary judgment procedure `is designed to secure the just, speedy, and inexpensive determination of every action' and shall be construed *786 to accomplish these ends." King v. Parish Nat'l Bank, 04-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545 (quoting La. C.C.P. art. 966(A)(2)). An appellate court reviews a trial court's decision granting summary judgment de novo using the same standard applied by the trial court in deciding the motion for summary judgment. Schmidt v. Chevez, 00-2456, p. 4 (La.App. 4 Cir.1/10/01), 778 So.2d 668, 670. According to this standard, a summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Schmidt, 00-2456 at p. 3, 778 So.2d at 670.

DISCUSSION
The dispositive issue on appeal is whether Mr. Sanchez was Harbor's borrowed servant. Although an employee's borrowed servant status is a legal issue for the court to decide, the jurisprudence has enunciated the following nine factual factors to be considered in determining whether an employee should be characterized as a borrowed servant:
1. Who had control over the employee and the work he was performing beyond mere suggestion of details or cooperation?
2. Whose work was being performed?
3. Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
4. Did the employee acquiesce in the new work situation?
5. Did the original employer terminate his relationship with the employee?
6. Who furnished tools and place for performance?
7. Was the new employment over a considerable length of time?
8. Who had the right to discharge the employee?
9. Who had the obligation to pay the employee?
Hall v. Equitable Shipyard, Inc., 95-1754 at p. 4 (La.App. 4 Cir. 2/29/96), 670 So.2d 543, 545-46 (citing Ledet v. Quality Shipyards, Inc., 615 So.2d 990, 992 (La.App. 1st Cir.1993)); see also Wells v. Traynor, 04-0064 (La.App. 4 Cir. 12/1/04), 892 So.2d 21. We separately analyze each of these factors.
1. Control
For worker's compensation purposes, the jurisprudence has considered an employee borrowed when the lending employer gives up control to the borrowing employer. Freeman v. Brown's Furniture of Bunkie, Inc., 527 So.2d 544 (La.App. 3d Cir.1988). This factor addresses who directly supervises the employee while the work is being performed. Mr. Perry testified that Global did not provide Harbor with any supervisors to oversee the daily work performed by its employees at the job site. He further testified that Harbor personnel directly supervised the work of Global's employees. Likewise, Ms. Hebert acknowledged that Mr. Sanchez was supervised and controlled by Harbor. This factor supports a finding of borrowed servant status.
2. Whose work?
Both Mr. Perry and Ms. Hebert testified that Mr. Sanchez was performing Harbor's work. Indeed, the only work that Mr. Sanchez performed while he was employed by Global was on behalf of Harbor. This factor thus favors a finding of borrowed servant status.
*787 3. Agreement
The Master Service Agreement in effect between Global and Harbor at the time of the accident specifically provided that Global "is to serve as a labor resource service furnishing qualified skilled and semi-skilled workers on request as needed" to Harbor. The agreement requires Harbor to keep daily time sheets on the workers and to report the number of hours the employees worked to Global. The agreement further requires that Global issue an invoice to Harbor and pay its own employees. The agreement still further requires Harbor to provide "all machinery, equipment, and job supervision." Under the agreement, Global is required to provide "workers compensation and general liability coverages within the limits required by the client [Harbor]."
Mr. Sanchez contends that the latter requirement that Global provide the worker's compensation insurance establishes that he is not Harbor's borrowed servant. This contention is belied by Ms. Hebert's testimony that part of the hourly rate that Global billed Harbor went to pay insurance costs, including worker's compensation. Harbor thus, in effect, did pay (albeit indirectly) for Mr. Sanchez's worker's compensation coverage. See Melancon v. Amoco Production Co., 834 F.2d 1238, 1247, n. 17 (5th Cir.), reh'g granted on other grounds, 841 F.2d 572 (5th Cir.1988). Regardless, both the lending and borrowing employer are liable in solido for worker's compensation. La. R.S. 23:1031(C).[4] This factor also supports a finding of borrowed servant status.[5]
4. Did the employee acquiesce?
Although there is no evidence that Mr. Sanchez voiced any objection to Global regarding his work assignments at the Harbor job site, he only worked at Harbor for one day  the day of the accident. This factor, therefore, is neutral as to Mr. Sanchez's borrowed servant status.
5. Did Global terminate its relationship with Mr. Sanchez?
This factor evaluates the lending employer's relationship with the employee while the borrowing occurs. Foreman v. Danos and Curole Marine Contractors, Inc., 97-2038, p. 11 (La.App. 1 Cir. 9/25/98), 722 So.2d 1, 6. This factor does not require a lending employer to completely sever its relationship with the employee. *788 Id. In order to find that a relationship has been terminated, this factor requires that the lending employer place no restrictions upon the employment conditions of its employee. Id. The determinative facts on this factor are that Mr. Sanchez was supervised by Harbor employees and paid by Global. Indeed, but for the accident Global's only involvement with Mr. Sanchez would have been to pay him.
In support of his claim that Global retained a relationship with him, Mr. Sanchez relies on the fact that the only accident report was prepared by Global. In this regard, Mr. Perry testified that after the accident he not only called for an ambulance, but also called Global to report that one of its employees was injured. A Global employee, Mr. Cronic, came to the job site and prepared the accident report. Mr. Perry testified that although Harbor normally would have prepared an accident report, it did not do so because Global had prepared one. Mr. Perry further testified that Mr. Sanchez refused to ride in the ambulance. Instead, he left the job site with Mr. Cronic, who took him to the hospital in a Global vehicle.
Despite Global's post-accident involvement with Mr. Sanchez, it is undisputed that no Global supervisors were on the job site at the time of Mr. Sanchez's accident. Moreover, the agreement between Harbor and Global clearly required Harbor to provide the job supervision. Given that Global's involvement with Mr. Sanchez while working at the Harbor job site was minimal, we find this factor supports a finding of borrowed servant status.
6. Who furnished the tools and place?
Mr. Sanchez was working at Harbor's job site. The agreement required Harbor to furnish the primary tools  machines, cutting torches, grinders, electrodes, and similar items  and the employees to furnish their personal equipment  the basic hand tools and safety equipment necessary to perform their duties, i.e., hard hat, safety glasses, steel toe shoes, gloves, welding shield, and similar items. Consistent with the agreement, Ms. Hebert testified that although the employees were to furnish their own personal equipment, Harbor was required to furnish the welding machine, torch, grinding wheels, and other primary equipment needed to do the job. This factor supports a finding of borrowed servant status.
7. Length of time?
Where the length of time the employee has worked for the borrowing employer is considerable, this factor is significant and supports a finding that the employee was a borrowed servant. Foreman, 97-2038 at p. 7, 722 So.2d at 12. The converse, however, is not true. One day of employment has been found not to bar a finding of borrowed servant status. Hall, supra (citing Capps v. N.L. Baroid-NL Industries, Inc., 784 F.2d 615 (5th Cir.1986)). A short term employment will generally require a finding of neutrality as to this factor. Foreman, 97-2038 at pp. 12-13, 722 So.2d at 7. In this case, Mr. Sanchez was injured on the first day on the job. Global had not sent him on any previous jobs; this factor is neutral as to Mr. Sanchez's borrowed servant status.
8. Right to discharge
The question posed by this factor is "not which entity had the power to terminate the injured plaintiff's employment outright, but whether the borrowing employer had the authority to terminate the employee's services with itself." Alleman v. Omni Energy Services Corp., 512 F.Supp.3d 448, 455 (E.D.La.2007) (citing Melancon, 834 F.2d at 1246); see also Maddox v. Superior Steel, 00 1539, p. 8 *789 (La.App. 1 Cir. 9/28/01), 814 So.2d 569, 574. This requirement is met if the borrowing employer has the authority to terminate the employee's work at the job site. Hall, 95-1754 at p. 8, 670 So.2d at 547. Although Global ultimately retained the right to terminate its own employees, both Mr. Perry and Ms. Hebert testified that Harbor had the right to terminate an employee sent to it by Global. Harbor thus had the right to terminate Mr. Sanchez's services with itself, and this factor supports a finding of borrowed servant status.
9. Obligation to pay
This factor focuses on who provided the funds used to pay the employee. See Jones v. Compression Coat Corp., 00-0333, p. 11 (La.App. 3 Cir. 11/2/00), 776 So.2d 505, 512; Hall, supra. The inquiry under this factor is not from which employer's bank account the employee's paychecks originate. Alleman, supra. When the borrowing employer pays the lending employer an hourly rate and the lending employer then pays from that sum a lower rate to the borrowed employee, a finding of borrower servant status is supported. Id. Such was the case here. Harbor furnished the funds from which Global ultimately paid Mr. Sanchez. Melancon, 834 F.2d at 1246. This factor also supports a finding of borrowed servant status.
In sum, we find, based on the above analysis, that Harbor established Mr. Sanchez was its borrowed servant at the time of the accident; the trial court did not err in granting summary judgment.

DECREE
For the reasons stated above, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The record reflects that the job on which Mr. Sanchez was working involved removing two large cranes from a ship. Due to the nature of his employment, this claim may arise under general maritime law, and Mr. Sanchez's remedy would be under the LHWCA, not Louisiana law. Regardless, under either the LHWCA or Louisiana law a finding of borrowed servant status would bar his tort claim.
[2] During the interim between the filing of the first and second motions for summary judgment, Mr. Sanchez added as defendants Harbor's general liability and maritime insurer, Gray, and one of Harbor's employees, Mr. Nguyen. Gray and Mr. Nguyen joined with Harbor in filing the second motion for summary judgment. They likewise are appellees in this appeal. The parties do not dispute that a finding that Harbor was Mr. Sanchez's borrowed employer is dispositive of the non-intentional tort liability as to all three of these defendants. Thus, for ease of discussion, we refer solely to Harbor.
[3] An intervention was filed by Mr. Sanchez's direct employer, Global Fabrication and Welding, and its worker's compensation insurer, the Louisiana Commerce and Trade Association Self Insurers' Fund. Although Global opposed the first motion for summary judgment, it did not oppose the second motion. Indeed, the August 2, 2006 judgment granting the second motion states that "[c]ounsel for Intervenor had waived its appearance and file[d] no opposition to the Motion for Summary Judgment."
[4] La. R.S. 23:1031(C) provides as follows:

In the case of any employee for whose injury or death payments are due and who is, at the time of the injury, employed by a borrowing employer in this Section referred to as a "special employer", and is under the control and direction of the special employer in the performance of the work, both the special employer and the immediate employer, referred to in this Section as a "general employer", shall be liable jointly and in solido to pay benefits as provided under this Chapter. As between the special and general employers, each shall have the right to seek contribution from the other for any payments made on behalf of the employee unless there is a contract between them expressing a different method of sharing the liability. Where compensation is claimed from, or proceedings are taken against, the special employer, then, in the application of this Chapter, reference to the special employer shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the general employer by whom he is immediately employed. The special and the general employers shall be entitled to the exclusive remedy protections provided in R.S. 23:1032.
[5] The indemnity and contribution rights between Harbor and Global were not addressed by the trial court and are not before us on appeal. Nor do we address Mr. Sanchez's rights to compensation.