DAVID S. GORBATY, Judge.
 

 | iThis action arises in tort. The issues on appeal are two-fold: 1) whether the trial court erred in finding Sundown Energy, L.P., not liable to Mr. Nguyen because it did not operate or control the site in question; and, 2) whether the trial court erred in finding Eland Energy, Inc., was the borrowing employer of Mr. Nguyen, and therefore immune from tort liability. Mr. Nguyen appeals the grant of summary judgments to defendants, Eland Energy, Inc., and Sundown Energy, L.P. For the following reasons, we affirm.
 

 FACTS:
 

 Mr. Nguyen was injured while working as a welder on property owned by Sundown Energy, L.P. (hereinafter “Sundown”). Mr. Nguyen was employed by BV Weston Construction, L.L.C (hereinafter “BV Weston”). According to Mr. Nguyen, after his injury Weston paid him workers’ compensation benefits pursuant to the Louisiana Workers Compensation
 
 *550
 
 Act. Mr. Nguyen subsequently also filed |2a claim pursuant to the Longshore and Harbor Workers’ Compensation Act (hereinafter “LHWCA”).
 

 According to Mr. Nguyen, BV Weston’s workers’ compensation coverage with Louisiana Workers’ Compensation Corporation (LWCC) did not include claims under the federal Act; therefore, once Mr. Nguyen filed his claim pursuant to the LHWCA, all benefits were discontinued.
 

 Because Weston did not have coverage for claims filed pursuant to the LHWCA, Mr. Nguyen filed a tort action naming BY Weston, Brian Weston, Sundown, Eland and Quality Pipeline & Construction, Inc., pursuant to 33 U.S.C. §§ 904 and 905(a), which allow a direct action against an employer when there is no coverage and compensation is not paid.
 

 Originally, Mr. Nguyen filed suit in federal court, but his case was dismissed for lack of subject matter jurisdiction. He then filed in state court. Sundown and Eland each filed motions for summary judgment, which were granted by the trial court. This appeal followed.
 

 STANDARD OF REVIEW:
 

 “Favored in Louisiana, the summary judgment procedure ‘is designed to secure the just, speedy, and inexpensive determination of every action’ and shall be construed to accomplish these ends.”
 
 King v. Parish Nat’l
 
 Bank, 04-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545 (quoting La.Code Civ. Proc. Art. 966 A(2)). Motions for summary judgment are reviewed on appeal
 
 de novo.
 
 The same criteria that govern the trial court’s determination of whether summary judgment is appropriate are used by the reviewing court.
 
 Samaha v. Ran,
 
 07-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-883. A motion for summary judgment will be |3granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ. Proc. Art. 966 B. The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La.Code Civ. Proc. Art. 966 C(2).
 

 The determination of whether a fact is material turns on the applicable theory of recovery.
 
 Thomas v. Norih 40 Land Dev., Inc.,
 
 04-0610, p. 22 (La.App. 4 Cir. 1/26/05), 894 So.2d 1160, 1174. A fact is material if its existence or non-existence is essential to plaintiffs cause of action under the applicable theory of recovery.
 
 Harvey v. Francis,
 
 00-1268, p. 5 (La.App. 4 Cir. 3/21/01), 785 So.2d 893, 897. Thus, not all disputed facts are material for the purposes of summary judgment.
 

 DISCUSSION:
 

 The first issue to be decided on appeal is whether borrowed servant status is applicable under both the LWCA and the LHWCA. Mr. Nguyen argues that summary judgment is premature because it has yet to be determined if he can recover workers’ compensation pursuant to the LHWCA.
 

 
 *551
 
 | j Eland and Sundown argue that it does not matter which compensation Act applies, because the issues of liability are determined using the same criteria regardless of under which Act the claimant seeks recovery. Thus, whether Mr. Nguyen’s claims for workers’ compensation arise under the LWCA or the LHWCA is not a material fact that precludes the granting of summary judgment. We agree.
 

 Jurisprudence dictates that the test to determine borrowed servant status, which precludes tort liability, is the same under both the LWCA and the LHWCA.
 
 Sanchez v. Harbor Constr. Co., Inc.,
 
 07-0234, p. 2, n. 1 (La.App. 4 Cir. 10/3/07), 968 So.2d 783, 784;
 
 Johnson v. Rogers & Phillips, Inc.,
 
 99-0116, p. 4 (La.App. 4 Cir. 7/21/99), 753 So.2d 286, 289-90;
 
 Ruiz v. Shell Oil Co.,
 
 413 F.2d 310 (5 Cir.1969).
 

 Accordingly, we will analyze the basis for Eland’s and Sundown’s motions.
 

 A. Eland’s motion:
 

 Based on the above finding, the only issue to be decided by this Court relative to the grant of Eland’s motion for summary judgment is whether it is the borrowing employer of Mr. Nguyen, and therefore immune to tort liability.
 

 Jurisprudence has enunciated nine factors to be considered in determining whether an employee should be characterized as a borrowed servant:
 

 1. Who had control over the employee and the work he was performing beyond mere suggestion of details or cooperation:
 

 2. Whose work was being performed?
 

 3. Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
 

 4. Did the employee acquiesce in the new work situation?
 

 5.Did the original employer terminate his relationship with the employee?
 

 |b6. Who furnished the tools and place for performance?
 

 7. Was the new employment over a considerable length of time?
 

 8. Who had the right to discharge the employee?
 

 9. Who had the obligation to pay the employee?
 

 Sanchez,
 
 07-0234, pp. 4-5, 968 So.2d at 786,
 
 citing Hall v. Equitable Shipyard, Inc.,
 
 95-1754, p. 4 (La.App. 4 Cir. 2/29/96), 670 So.2d 543, 545-46.
 

 1. Control.
 

 For workers’ compensation purposes, an employee is considered borrowed when the lending employer gives up control to the borrowing employer.
 
 Sanchez, supra, citing Freeman v. Brown’s Furniture of Bunkie, Inc.,
 
 527 So.2d 544 (La. App. 3 Cir.1988). In other words, which entity directly supervised the employee’s work? The deposition of Brian Weston is attached to Eland’s memorandum in support of its motion. Mr. Weston testified that he hired Mr. Nguyen to perform welding services, but Mitch Thompson, an Eland employee, and other Eland production operators directly supervised and had the authority to issue instructions to BV Weston employees. These facts support a finding of borrowed servant status.
 

 2. Whose work?
 

 Brian Weston testified that he hired laborers and welders for work at the Sundown facility and furnished them to Eland. Again, this factor favors a finding of borrowed servant status.
 

 3. Agreement.
 

 Eland submitted in support of its motion the affidavit of Robin McGuire, general
 
 *552
 
 counsel for Eland.
 
 [1]
 
 Mr. McGuire attested that Sundown owned the facility | 6in question, but that Eland operated the property pursuant to a management agreement. The record also contains a copy of the management agreement between Sundown and Eland for work at all Sundown sites, including the site in question.
 

 Mr. Nguyen calls into question whether Mitch Thompson was an employee of Sundown or Eland. This confusion apparently grew out of the fact that some personnel working at the site wore uniforms with the Sundown name on them. Indeed, Brian Weston testified that he believed Mitch Thompson worked for Sundown. However, Mr. McGuire’s affidavit indicates that Mitch Thompson was an Eland employee, and was supervised by and reported to Mark Rogers, another Eland employee. The affiant also stated that Sundown had no employees at this site. Thus, while this disputed fact clouds the issue to some degree, we find that borrowed servant status is more likely than not.
 

 4.Did the employee acquiesce?
 

 The record does not indicate one way or the other whether Mr. Nguyen acquiesced in the situation. We note that by his admission, Mr. Nguyen did not speak fluent English or fully comprehend the language. However, he testified that he worked for Brian Weston and was paid by Brian Weston. The checks he received were written on the BV Weston account. However, Mr. Nguyen testified that he turned in his hours worked to Mitch Thompson. Although Mr. Nguyen was of the belief that Mitch Thompson, “Eddie and Brian” all worked for Sundown because of the uniforms they wore, this belief is contradicted by Mr. McGuire’s affidavit. Mr. Nguyen also testified that Mitch Thompson told him what work to perform and “Mr. Brian” told him where to work. These facts preponderate in 17favor of borrowed employee status, regardless of whether Mr. Nguyen believed Mitch Thompson and others who supervised him worked for Sundown or Eland.
 

 5. Did BV Weston or Brian Weston terminate their relationship with Mr. Nguyen?
 

 This factor evaluates the lending employer’s relationship with the employee while the borrowing occurs.
 
 Sanchez,
 
 07-0284, p. 7, 968 So.2d 788, 787,
 
 citing Foreman v. Danos and Curole Marine Contractors, Inc.,
 
 97-2038, p. 11 (La.App. 1 Cir. 9/25/98), 722 So.2d 1, 6. This factor does not require a lending employer to completely sever its relationship with the employee.
 
 Id.
 
 It is clear from Brian Weston’s testimony that he considered Mr. Nguyen to be his employee, however he freely admitted that Eland employees gave the bulk of supervision and direction at the site. These facts support a finding of borrowed servant status.
 

 6. Who furnished the tools and place?
 

 Brian Weston testified that the pipes and valves being installed at the site were supplied by Sundown/Eland, but that the welding equipment being used belonged to his company, BV Weston. Mr. Nguyen testified that he had some tools of his own, presumably his welding shield and gloves, that he carried to work each day in a five-gallon bucket. The site of the accident was clearly owned by Sundown and being operated by Eland. These particular facts are neutral as to a finding of borrowed servant.
 

 
 *553
 
 7. Length of time.
 

 Where the length of time the employee has worked for the borrowing employer is considerable, this factor is significant and supports a finding that the employee was a borrowed servant.
 
 Foreman,
 
 97-2038 at pp. 12-13, 722 So.2d at 7. The converse, however, is not true. Courts have found one day of employment |8to be sufficient for a finding of borrowed servant.
 
 Hall v. Equitable Shipyard, Inc.,
 
 95-1754, p. 4 (La.App. 4 Cir. 2/29/96), 670 So.2d 543, 545-46,
 
 citing Capps v. N.L. Baroid-NL Industries, Inc.,
 
 784 F.2d 615 (5th Cir.1986). In this case, Mr. Nguyen was injured approximately 3 months after he began working. We find this sufficient for a finding of borrowed servant.
 

 8. Right to discharge.
 

 This factor considers whether the borrowing employer had the authority to terminate the employee’s services with it. This is not the same as considering which entity could fire the injured employee.
 
 See Sanchez,
 
 07-0234, p. 9, 968 So.2d at 788-89. There is ample evidence in the record that the jobsite was run by Eland employees. Brian Weston testified repeatedly that, although he considered Mr. Nguyen to be his employee, the Eland employees “called the shots.” This factor supports a finding of borrowed servant status.
 

 9. Obligation to pay.
 

 This factor focuses on which entity provided the funds with which the injured employee was paid.
 
 Sanchez,
 
 07-0234, pp. 9-10, 968 So.2d at 789. When the borrowing employer pays the lending employer and then the lending employer in turn pays his workers, a finding of borrowed servant is supported.
 
 Id.
 
 Mr. Nguyen testified that he turned in his hours worked to an Eland employee, but that he was paid from Brian Weston’s personal account. Brian Weston testified that he turned in invoices to Mitch Thompson, an Eland employee, and would be paid with an Eland check. He paid his laborers from his BV Weston account, but paid Mr. |aNguyen with a personal check.
 
 [2]
 
 This factor supports a finding of borrowed servant status.
 

 In sum, after analyzing all of the factors, we find that the trial court did not err in concluding that Mr. Nguyen was the borrowed servant of Eland.
 

 A. Sundown’s motion:
 

 The issue to be decided relative to Sundown’s motion is whether it had any liability for Mr. Nguyen’s injuries.
 

 Sundown argues in its motion that it did not have any employees, and merely owned the property where the subject accident took place. Sundown hired Eland as an independent contractor pursuant to a management agreement to manage and operate the site in question. Eland exercised all supervision and control over its employees while conducting the operations on Sundown’s property. Sundown argues that it is merely the property owner and is not liable for any negligence of Eland, an independent contractor. Jurisprudence supports Sundown’s arguments that where the property owner has delegated the supervision and control over the property to an independent contractor, it retains no legal duty to provide a safe workplace for workers on the property.
 
 *554
 

 See Buras v. Lirette,
 
 97-1255 (La.App. 4 Cir. 12/23/97), 704 So.2d 980.
 

 Mr. Nguyen alleged that the cause of his accident was the presence of oil in a storage tank near where he was welding, suggesting the existence of a hazardous condition. Sundown argues that there is no evidence that it was negligent for any hazardous condition on its property, or had knowledge of any hazardous condition. |inThe presence of oil in the tank did not result from any activity performed by Sundown, nor did Sundown acquire any information to place it on notice that there was oil in a tank which created a risk of harm to Mr. Nguyen. Thus, Sundown had no independent duty to Mr. Nguyen. However, if it should be proven that Sundown was vicariously liable in some way, Sundown argues that it is the borrowing employer of Mr. Nguyen as a matter of law. There is support in the record for all of Sundown’s allegations.
 

 Mr. Nguyen argues, however, that Sundown’s motion for summary judgment is premature because his status under the LHWCA has yet to be determined by a federal administrative law judge. Further, Sundown’s argument that Mr. Nguyen was a borrowed servant is inapplicable to the facts of this case because borrowed servant immunity only arises pursuant to the LWCA.
 

 We have previously discussed whether a finding of borrowed servant status is premature and whether borrowed servant status is applicable under both compensation laws, and find Mr. Nguyen’s arguments to be without merit.
 

 Mr. Nguyen offered no proof to refute the documentation and testimony in support of Sundown’s motion. Accordingly, Mr. Nguyen will not be able to meet his burden pursuant to La. Code Civ. Proc. Art. 966 C(2).
 

 CONCLUSION:
 

 For the foregoing reasons, we affirm the judgments of the trial court.
 

 AFFIRMED.
 

 [1]
 

 . We note that Mr. McGuire also submitted an affidavit on behalf of Sundown, in which he stated he was the vice president of land for Sundown.
 

 [2]
 

 . Depositions in the record contain some discussion concerning Mr. Nguyen’s collection of unemployment benefits while working at this job, hence his insistence on being paid with a personal check. However, that issue is not before this Court.