WALTER J. ROTHSCHILD, Judge.
| ¿Plaintiff, Ralph Manning, appeals from a summary judgment granted in favor of defendants, Curley Sampson and Metals USA Plates and Shapes Southeast, Inc. (“Metals USA”), which dismissed plaintiffs claims against them. For the following reasons, we affirm.

STATEMENT OF THE CASE

Task Force Temporary Services, Inc. (“Task Force”) is an agency that provides temporary labor to companies. Through Task Force, Ralph Manning began working at the Metals USA facility in Wagga-man, Louisiana, in May of 2005. On July 12, 2005, while working at the Metals USA facility, Mr. Manning suffered injuries when a beam allegedly fell from an overhead crane and struck him in the face. On July 12, 2006, Mr. Manning filed a tort suit against Curley Sampson, who was operating the overhead crane, and Metals USA, seeking damages for his injuries.
On February 23, 2009, Mr. Sampson and Metals USA filed a Motion for Summary Judgment, asserting that Mr. Manning was a borrowed servant of Metals |sUSA at the time of the accident and thus, his tort suit was barred by the exclusivity provisions of the Louisiana Worker’s Compensation Act. Mr. Manning filed an Opposition on August 11, 2009.
A hearing was held before the trial court on August 11, 2009. After hearing argument from counsel for plaintiff and defendants, the trial judge granted defendants’ Motion for Summary Judgment and dismissed plaintiffs lawsuit, finding that this was a “classic borrowed servant” case and that plaintiffs exclusive remedy was for worker’s compensation benefits. The trial judge signed a written judgment on August 31, 2009. Plaintiff appeals.

DISCUSSION

Appellate courts review the granting of a summary judgment de novo under the same criteria governing the trial court’s consideration of whether a summary judgment is appropriate. Gootee Construction, Inc. v. Amwest Surety Insurance Co., 00-1639 (La.App. 5 Cir. 2/28/01), 781 So.2d 792, 795, writ denied, 01-866 (La.5/11/01), 792 So.2d 739. LSA-C.C.P. art. 966 B provides that a summary judgment shall *910 be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. Summary judgment is favored, but the burden of proof remains with the mover. Prince v. K-Mart Corp., 01-1151 (La.App. 5 Cir. 3/26/02), 815 So.2d 245, 248. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, the non-moving party then must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. Id. If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. LSA-C.C.P. arts. 966 and |4967; Smart v. Winn-Dixie of Louisiana, Inc., 99-435 (La.App. 5 Cir. 9/28/99), 742 So.2d 1062, 1064, writ denied, 99-3111 (La.1/7/00), 752 So.2d 870.
On appeal, Mr. Manning contends that the trial court erred in granting summary judgment in favor of Mr. Sampson and Metals USA, because: 1) the issue at hand is factual and must be resolved on a case-by-case basis; 2) the trial court considered only one factor and did not analyze the totality of the circumstances before rendering its decision; 3) the totality of the circumstances and the facts are overwhelming that Mr. Manning was an employee of Task Force, not Metals USA, on the date of the accident; 4) genuine issues of material fact exist; and 5) Mr. Sampson and Metals USA did not meet their burden of proving a statutory employment relationship to avoid tort liability.
The dispositive issue in this case is whether Mr. Manning was Metals USA’s borrowed servant at the time of the accident, under LSA-R.S. 23:1031(C). Pursuant to LSA-R.S. 23:1032, if Mr. Manning was a borrowed servant of Metals USA, Metals USA and Mr. Sampson are immune from tort liability and Mr. Manning’s exclusive remedy is for worker’s compensation benefits. The following factors have been set by the courts to determine whether a worker should be characterized as a borrowed servant:
1) Who had the right of control over the employee and the work he was performing beyond mere suggestion of details or cooperation?
2) Whose work was being performed?
3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
4) Did the employee acquiesce in the new work situation?
5) Did the original employer terminate his relationship with the employee?
6) Who furnished the tools and place for performance?
7) Was the new employment over a considerable length of time?
8) Who had the right to discharge the employee?
9) Who had the obligation to pay the employee?
Sanchez v. Harbor Constr. Co., Inc., 07-234, pp. 4-5 (La.App. 4 Cir. 10/3/07), 968 So.2d 783, 786; Hall v. Equitable Shipyard, Inc., 95-1754, p. 4 (La.App. 4 Cir. 2/29/96), 670 So.2d 543, 545-46.
Although no one factor is disposi-tive in determining borrowed servant status, the right of control factor weighs heavily in favor of borrowed servant status. Andrew-Hong v. Gray Insurance Co., 06-93, p. 2 (La.App. 4 Cir. 11/2/06), 945 So.2d 124, 126.
In the present case, in support of their Motion for Summary Judgment, defen *911 dants submitted the affidavit of Charles Crum, who is the general manager of Metals USA. In his affidavit, Mr. Crum stated that under the agreement between Metals USA and Task Force, Metals USA would contact Task Force when it needed additional employees, and it would identify the position needed to be filled, the requirements for that position, and the rate of pay for the individuals to be hired. Mr. Crum stated that once an employee was sent by Task Force to Metals USA, Metals USA had direct control over the employee and provided the equipment for the employee to do his job. He further indicated that Metals USA had the right to terminate Mr. Manning at any time while he was working at Metals USA.
Also in support of their motion, defendants submitted excerpts from the deposition of Ralph Manning. In his deposition, Mr. Manning testified that he contacted Task Force and told them that he wanted to be a forklift operator and that he was looking for something long-term or permanent. Task Force told him about the job at Metals USA, and he was interested, so he interviewed with them. While working at the Metals USA facility, a Metals USA employee always directed him and told him what to do, and he considered Metals USA’s employees to be his supervisors. No one from Task Force instructed him on what he needed to do at |fiwork. Metals USA provided him with a hard hat and safety glasses to use, and all of the equipment he used belonged to Metals USA. Mr. Manning did note that Task Force supplied him with a t-shirt to wear while working at Metals USA, in order to differentiate him as a temporary agency employee. Mr. Manning acknowledged that Metals USA could fire him or give him a raise, if they chose to do so. He further stated that he never did any work directly for Task Force.
In opposition to the Motion for Summary Judgment, Mr. Manning asserted that he was never an employee of Metals USA and that he was at all times an employee of Task Force. Along with his opposition memorandum, Mr. Manning submitted his check stubs which show that he was paid by Pioneer, L.L.C., which he states is a company that is associated with Task Force. These check stubs reflect that Pioneer withheld taxes and paid Mr. Manning his wages. Mr. Manning also submitted his entire deposition and some of his medical records which list Task Force as his employer.
The courts have found borrowed servant status in cases similar to this one. In Maddox v. Superior Steel, 00-1539 (La. App. 1 Cir. 9/28/01), 814 So.2d 569, Melvin Maddox was employed by Western Staff Services (“Western”), a temporary employment service, and contracted to work for Superior Steel, Inc. (“Superior”). He was injured while working at Superior and filed a tort suit against Superior. Superior filed a Motion for Summary Judgment, arguing that plaintiffs sole remedy was worker’s compensation and that Superior has tort immunity as the statutory employer of Mr. Maddox. The trial judge granted summary judgment. On appeal, the First Circuit analyzed the factors for determining borrowed servant status and upheld the trial court’s ruling. In its opinion, the Court specifically noted: there was an agreement between Superior and Western regarding the lease of labor; Superior had the right of control over Mr. Maddox when he was at the job )7site; Superior furnished the tools and the place to perform the work; Mr. Maddox was doing work for Superior at the time of the accident; Western issued Mr. Maddox’s paycheck, but Superior provided the actual funds from which Mr. Maddox was paid; and Superior had the right to terminate an employee sent to it by Western.
*912 In Andrew-Hong v. Gray Insurance Co., 06-93 (La.App. 4 Cir. 11/2/06), 945 So.2d 124, Martin Andrew was doing carpentry work for ConstructionSouth, Inc. when he was killed during a work-related accident. Mr. Andrew’s children filed suit against ConstructionSouth asserting that Mr. Andrew was employed by Labor Finders, Inc., a temporary labor service, at the time of the accident and that Construction-South was liable in tort for Mr. Andrew’s injuries and resulting death. Construc-tionSouth and its insurer filed a Motion for Summary Judgment claiming that Mr. Andrew was a borrowed servant and as such the exclusive remedy of the plaintiffs was under the worker’s compensation laws. The trial court granted the motion for summary judgment. On appeal, the Fourth Circuit affirmed the summary judgment after reviewing the factors for determining borrowed servant status and specifically noting that ConstructionSouth, not Labor Finders, supervised employees at the work site, ConstructionSouth provided the equipment and tools for the employees to use, and ConstructionSouth had the authority to fire the employees for dissatisfactory work. The Court noted that Labor Finders would issue the checks to the employees it provided to Construc-tionSouth, but ConstructionSouth was the source of the funds used to pay the wages.
See also Pradia v. Southern Personnel of LA, Inc., 00-365 (La.App. 3 Cir. 10/11/00), 776 So.2d 474, writ denied, 00-3018 (La.1/5/01), 778 So.2d 599.
In the present case, the deposition of Ralph Manning makes it evident that he was a borrowed employee of Metals USA at the time of the accident. Mr. [ ^Manning admitted that Metals USA had the right of control and that Metals USA’s employees told him what work to do. He stated that he considered employees of Metals USA to be his supervisors. He acknowledged that Metals USA could fire him or give him a raise, if they chose to do so. He further stated that Metals USA provided him with safety glasses, a hard hat, and the equipment needed to perform his job. Although Mr. Manning did not fill out an application for employment with Metals USA, he was interviewed prior to starting work at their facility.
Mr. Manning argues that his check stubs demonstrate that he was an employee of Task Force, because he was paid by Pioneer, L.L.C., which is associated with Task Force. Although Mr. Manning’s check stubs show that he was paid by Pioneer, L.L.C., we note that the “obligation to pay” factor of the borrowed servant analysis focuses on who provided the funds to pay the employee, not from which employer’s bank account the employee’s paychecks originate. Sanchez, 07-234 at 10, 968 So.2d at 789. In his affidavit, Mr. Crum indicates that once Task Force issued the payroll checks to the employees, such as Mr. Manning, Metals USA would reimburse Task Force for the amounts expended on the payroll. In his deposition, Mr. Manning admitted that he did not know the payment arrangements between Task Force and Metals USA.
In his brief, Mr. Manning notes that Metals USA is not listed on any of his medical records. However, the fact that Task Force, not Metals USA, is listed as his employer on some of his records is not controlling in the test for determining borrowed servant status.
Mr. Manning claims that the trial judge only considered one factor and did not analyze the totality of the circumstances before rendering a decision. However, the transcript does not support this claim. At the hearing, the trial judge noted that the most important element is the right to control the work, but he also |3specifically stated that he was looking at the totality of *913 the circumstances when he determined that Mr. Manning was a borrowed servant.
We have thoroughly reviewed the matter before us de novo. We have considered each of the arguments set forth by Mr. Manning on appeal, and we find that none of them have merit. Considering the undisputed facts, along with the jurisprudence and factors for determining borrowed servant status, we find that the totality of the circumstances clearly shows that Mr. Manning was a borrowed servant of Metals USA at the time of the accident. As such, his lawsuit against defendant is barred by the exclusivity provisions of the worker’s compensation act.

DECREE

Based on the foregoing, we affirm the summary judgment granted in favor of defendants, Curley Sampson and Metals USA, dismissing plaintiffs claims against them.

AFFIRMED.