HANS J. LILJEBERG, Judge.
lain this personal injury lawsuit, plaintiff, Von Lastie, appeals a summary judgment granted in favor of defendants, the City of Gretna and Ronnie Harris. For the following reasons, we affirm the summary judgment.

FACTS AND PROCEDURAL HISTORY

The record reflects that in the summer of 2011, Mr. Lastie was directly employed by Temps Today Staffing, Inc. (“Temps Today”) and he was assigned to perform work for the City of Gretna (“Gretna”). On the morning of August 19, 2011, he was working with a grass-cutting crew. After working with the crew to cut grass in one location, Mr. Lastie and another worker got into a van owned by Gretna and operated by a Gretna employee, Sky Cooper, and they proceeded to the location of their next grass-cutting assignment.
Mr. Cooper pulled into a parking lot on Lafayette Street in Gretna, and he exited the van while Mr. Lastie and the other passenger remained in the back seat. After Mr. Cooper exited the van, it became apparent that Mr. Cooper had failed to |aput the van in “park.” The van rolled into oncoming traffic and was struck by a tractor trailer, causing Mr. Lastie to sustain personal injuries.
On May 14, 2012, Mr. Lastie filed this lawsuit against Mr. Cooper, Gretna, Ronnie Harris, as mayor of the City of Gretna at that time, and their insurers. Gretna and Mayor Harris filed an answer, generally denying the allegations in Mr. Lastie’s petition and asserting that Mr. Lastie was a statutory or borrowed employee of Gret-na which bars him from suing Gretna in tort due to the exclusive remedy provisions of the Louisiana Workers’ Compensation Act.[1]
On January 14, 2014, Gretna and Mayor Harris filed a motion for summary judgment, along with a statement of undisputed material facts, asserting that Mr. Lastie was a borrowed employee of Gretna and that he is barred from pursuing a tort action against them as his exclusive remedy is for worker’s compensation benefits. In support of their motion, Gretna and Mayor Harris submitted several exhibits, including: the deposition of Mr. Lastie; an affidavit of Shelia Navarre, President of Temps Today; an affidavit of Daniel Lasy-one, Gretna’s Director of Public Works; an affidavit of L.C. Williams, the Gretna employee who supervised Mr. Lastie; and Mr. Lastie’s answers to interrogatories.
On April 9, 2014, Mr. Lastie filed an opposition to defendants’ statement of undisputed material facts and an opposition to defendants’ motion for summary judgment, arguing that there are genuine issues of material fact regarding whether or not Mr. Lastie was a borrowed employee and thus barred from bringing a tort action against defendants. In support of his argument, Mr. Lastie submitted several exhibits, including: a copy of the accident report; excerpts from Mr. Lasyone’s 14deposition; Ms. Navarre’s deposition; *152 and a “Claim Payments Report” of medical and indemnity benefits paid by Louisiana Worker’s Compensation Corporation.
The motion for summary judgment came for hearing before the trial court on May 28, 2014. After hearing the arguments of counsel and considering the evidence submitted in support of and in opposition to defendants’ motion, the trial court granted summary judgment in favor of Gretna and Mayor Harris, finding that Mr. Lastie was a borrowed employee of Gretna. Mr. Lastie appeals this judgment.

LAW AND DISCUSSION

On appeal, Mr. Lastie argues that the trial court erred in granting summary judgment in favor of defendants, because there are genuine issues of material fact as to whether or not he was a borrowed employee of Gretna when the accident occurred. Pursuant to La. R.S. 23:1032, if Mr. Lastie was a borrowed employee of Gretna at the time of the accident, Gretna and Mayor Harris are immune from tort liability and Mr. Lastie’s exclusive remedy is for worker’s compensation benefits.
Appellate courts review the granting of a summary judgment de novo using the same criteria governing the trial court’s consideration of whether summary judgment is appropriate. Prince v. K-Mart Corp., 01-1151, p. 7 (La.App. 5 Cir. 3/26/02), 815 So.2d 245, 248; Duncan v. U.S.A.A. Ins. Co., 06-363, p. 3 (La.11/29/06), 950 So.2d 544, 547. A motion for summary judgment should be granted “if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2). The summary judgment procedure is favored, and shall be construed to secure the just, speedy, and inexpensive determination of most actions. La. C.C.P. art. 966(A)(2); Nuccio v. Robert, 99-1327, p. 6 (La.App. 5 Cir. 4/25/00), 761 So.2d 84, 87, writ denied, 00-1453 (La.6/30/00), 766 So.2d 544.
Borrowed employee disputes arise when a defendant who is not a plaintiffs formal employer asserts that the plaintiff is in fact acting as the defendant’s employee. McGlothurn v. Wade, 13-759, p. 6 (La.App. 5 Cir. 5/21/14), 142 So.3d 217, 220, writ denied, 14-1300 (La.9/26/14), 149 So.3d 268. The question of whether a borrowed employee relationship exists is a matter of law for the court to determine. Musa v. Litton-Avondale Industries, Inc., 10-627, p. 4 (La.App. 5 Cir. 3/29/11), 63 So.3d 243, 246, writ denied, 11-1256 (La.9/23/11), 69 So.3d 1163. The following factors, which were set forth in Ruiz v. Shell Oil Co., 413 F.2d 310 (5th Cir.1969), have been considered by the courts of this state to determine whether a worker should be characterized as a borrowed employee:
1) Who had the right of control over the employee and the work he was performing?
2) Whose work was being performed by plaintiff?
3) Was there an agreement, understanding, or meeting of the minds between the formal employer and the borrowing employer?
4) Did the employee acquiesce in the new work situation?
5) Did the original employer terminate his relationship with the employee?
6) Who furnished the tools and place for employment?
7) Was the new employment over a considerable length of time?
8) Who had the right to discharge the employee?
*153 9) Who had the obligation to pay the employee?
Manning v. Sampson, 10-151, pp. 4-5 (La.App. 5 Cir. 10/12/10), 50 So.3d 908, 910; Sanchez v. Harbor Constr. Co., Inc., 07-234, pp. 4-5 (La.App. 4 Cir. 10/3/07), 968 So.2d 783, 786. Although no one factor is dispositive in determining borrowed employee status, the right of control factor weighs heavily in favor of borrowed employee status. Manning, 10-151 at 5, 50 So.3d at 910; Andrew-Hong v. Gray Insurance Co., 06-93, p. 2 (La.App. 4 Cir. 11/2/06), 945 So.2d 124, 126.
In the present case, we consider the first Ruiz factor, which addresses who had the right of control over Mr. Lastie and the work he was performing. In his deposition, Mr. Lastie testified although he was directly employed by Temps Today, L.C. Williams, a Gretna employee, had to approve of him before he was permitted to perform work for Gretna. He further stated that he considered L.C. Williams to be his supervisor, and he signed in and out with Mr. Williams every day. Mr. Lastie acknowledged that Gretna had the right to tell Temps Today not to send him to work for Gretna if they were not happy with him. Mr. Lastie testified that when he started performing work for Gretna, no one from Temps Today directed him to do anything or checked on his work. After he started doing work for the City of Gretna, he reported only to L.C. Williams.
Shelia Navarre, the President of Temps Today, stated in her affidavit that Gretna supervised and controlled the day-to-day work activities of Mr. Lastie, provided supervising employees over Mr. Lastie, and determined the work Mr. Lastie would perform and the location of the work. She further stated that Temps Today did not supervise Mr. Lastie or any of the work he performed for Gretna.
Daniel Lasyone, Director of Public Works for Gretna, also stated in his affidavit that Gretna supervised and controlled Mr. Lastie’s work activities, including the location and manner in which the work was to be performed. He further stated that Temps Today did not supervise Mr. Lastie or any of the work he |7performed for Gretna. Mr. Lasyone also stated that L.C. Williams was Mr. Lastie’s supervisor during the time that Mr. Lastie performed work for Gretna.
L.C. Williams also submitted an affidavit and stated that he was Mr. Lastie’s supervisor while he was performing work for Gretna, and that Gretna supervised and controlled Mr. Lastie’s work. He stated that no one from Temps Today supervised Mr. Lastie or his work for Gretna.
On appeal, Mr. Lastie argues that no one was supervising him at the time of the accident, because the accident occurred when Mr. Cooper stopped the van at a convenience store in order to buy cigarettes, which was a “personal purchase.” However, none of the evidence submitted in support of or in opposition to the motion for summary judgment supports this argument. Further, Mr. Lastie admitted in his answers to interrogatories that he was in the course and scope of his employment at the time of the accident, and there was no evidence presented to the contrary. The evidence presented clearly establishes that Gretna had the right of control over Mr. Lastie, thereby favoring a finding of borrowed employee status.
For consideration of the second Ruiz factor, we ask whose work was being performed. In his deposition, Mr. Lastie indicated that after they cut grass at one location, Mr. Cooper drove the van to their next location and stopped in a parking lot to “start setting up” to cut grass on a neutral ground. He also stated that the other passenger was putting gas in a weed *154 eater in the back of the van when Mr. Cooper got out of the van and the accident occurred. The evidence presented shows that Mr. Lastie was performing work for Gretna.
The third Ruiz factor asks whether there was an agreement, understanding, or meeting of the minds between the formal employer and the borrowing employer. The parties agree that there was no formal written contract signed by Temps Today and Gretna. However, Ms. Navarre for Temps Today and Mr. Lasyone for Gretna |Rboth indicated in their affidavits that Temps Today’s provision of Mr. Lastie’s services to Gretna occurred in conformity with the proposal dated December 1, 2010. This written proposal submitted by Temps Today to Gretna provides the proposed •terms for Temps Today to provide workers to Gretna for Mardi Gras or summer work. It proposes a rate of pay for the workers and notes that the employees provided by Temps Today are covered under Temps Today’s workers’ compensation policy. Ms. Navarre and Mr. Lasyone also stated in their affidavits that Gretna supervised and controlled the day-to-day work activities of Mr. Lastie, provided supervising employees, and determined the manner and location of work.
The evidence presented shows that there was an agreement, understanding, or meéting of the minds between Temps Today and Gretna for Temps Today to provide temporary employees to Gretna pursuant to the terms of the December 1, 2010 proposal, and for Gretna to supervise and control the work. Although there was no written contract executed by both parties, Mr. Lastie did not present any evidence to refute a finding that there was an agreement, understanding, or meeting of the minds between Temps Today and Gretna. Analysis of this third Ruiz factor clearly favors a finding of borrowed employee status.
The fourth Ruiz factor questions whether the employee acquiesced in the new work situation. Mr. Lastie stated in his deposition that he knew Gretna had some jobs open but he had to sign up with Temps Today first. Further, the affidavits of Ms. Navarre and Mr. Lasyone both indicate that Mr. Lastie was employed by Temps Today and was made aware of his assignment with Gretna. Mr. Lastie has presented no evidence to dispute that he acquiesced in his work situation. Accordingly, analysis of this factor favors a finding of borrowed employee status.
|aNext, we consider the fifth Ruiz factor, whether Temps Today terminated its relationship with Mr. Lastie. This factor does not require the lending employer to completely sever its relationship with the employee, because to do so would effectively eliminate the borrowed servant doctrine. Musa, 10-627 at 12, 63 So.3d at 249; McGlothurn, 13-759 at 23, 142 So.3d at 226. Rather, the focus is on the lending employer’s relationship with the employee while the borrowing occurs. Musa, supra.
Although Temps Today did not sever its relationship with Mr. Lastie, the ties were minimal. Temps Today issued his paychecks and provided worker’s compensation insurance, but it did not supervise or exercise any control over Mr. Lastie’s work.
In the sixth Ruiz factor, we consider who furnished the tools and place of employment. In his deposition, Mr. Lastie testified that Gretna provided the weed eater, gas for the weed eater, and a yellow vest to wear when he was out on the highway. In their affidavits, Ms. Navarre, Mr. Lasyone, and Mr. Williams all stated that Gretna provided the necessary tools or items for Mr. Lastie to perform his work, including a weed eater, gasoline for *155 the weed eater, a safety vest, and transportation in a Gretna-owned vehicle to and from his work areas. They further stated that Mr. Lastie’s work was performed at Gretna-selected work areas within the geographical confínes of Gretna. Mr. Lastie did not submit any evidence to dispute these assertions. The evidence submitted clearly shows that Gretna furnished the tools and place of employment for Mr. Lastie.
In the seventh Ruiz factor, we consider whether ' Mr. Lastie’s employment with Gretna was over a considerable length of time. Although Mr. Lastie had only been performing work for Gretna for approximately eight days before the accident, both Ms. Navarre and Mr. Lasyone stated in their affidavits that Mr. Lastie’s | inassignment with Gretna was long-term and that Temps Today and’Gretna intended for Mr. Lastie’s temporary employment with Gretna to extend through October of 2011. Further, Mr. Lastie testified that while he understood working for Gretna was a temporary position, he anticipated that it would become permanent as long as he came to work on time and performed well. Although Mr. Lastie had not been performing work for Gretna for a considerable length of time, the only evidence submitted on this issue indicates that the parties intended for Mr. Lastie’s work for Gretna to be a long-term assignment.
The eighth Ruiz factor addresses who had the right to terminate Mr. Lastie’s services for Gretna. In his deposition, Mr. Lastie acknowledged that Gretna could inform Temps Today not to send him back if they chose to. Further, in their affidavits, Ms. Navarre, Mr. Lasyone, and Mr. Williams stated that Gretna retained the right to refuse to accept or terminate Mr. Lastie’s services for Gretna at any time. Mr. Lastie has not presented any evidence to refute a finding that Gretna had the right to terminate his services for Gretna.
Finally, for the ninth Ruiz factor, we consider who had the obligation to pay Mr. Lastie. The “obligation to pay” factor of the borrowed employee analysis focuses on who provided the funds to pay the employee, not from which bank account the employee’s paychecks originated. Manning, 10-151 at 10-11, 50 So.3d at 912; Sanchez, 07-234 at 10, 968 So.2d at 789.
The evidence presented shows that Temps Today was responsible for issuing paychecks to Mr. Lastie. However, the affidavits of Ms. Navarre, Mr. Lasyone, and Mr. Williams 'indicate that the City of Gretna kept a record of the number of hours Mr. Lastie worked and had the obligation to pay Temps Today for Mr. Last-ie’s services by the hour.
| vi After a thorough de novo review of the record and exhibits before us, and based on our analysis of each of the Ruiz factors for determining borrowed employee status, we agree with the trial court that Mr. Lastie was a borrowed employee of Gretna at the time of the accident and there are no genuine issues of material fact on this issue. As such, his lawsuit against Gretna and Mayor Harris is barred by the exclusivity provisions of the worker’s compensation act. Accordingly, we find that summary judgment was properly granted in this matter.

DECREE

For the foregoing reasons, we affirm the summary judgment granted in favor of defendants, the City of Gretna and Ronnie Harris.

AFFIRMED.

. On September 11, 2012, the Louisiana Workers’ Compensation Corporation filed a petition of intervention, seeking "indemnity, recovery, reimbursement, credit and/or offset, against past or future payments out of any judgment or settlement which may be awarded to the Plaintiff.”